[No. B051552. Second Dist., Div. Five. Sept. 24, 1991.]

WILLIAM LITTLE, Plaintiff and Respondent, v.
COMMUNITY BANK, Defendant and Appellant.

**COUNSEL**

Tobin & Tobin and John L. Hosack for Defendant and Appellant.

Rich & Ezer and Mitchel J. Ezer for Plaintiff and Respondent.

**OPINION**

**ASHBY, Acting P. J.**—Appellant Community Bank appeals from the judgment rendered in favor of respondent William Little upon the granting of respondent's summary judgment motion. Appellant, an enforcing creditor, caused a home to be sold at a sheriff's sale. Respondent bought the home and later discovered that prior to the sale, appellant had not disclosed all liens on the property. The trial court determined appellant was negligent and entered judgment in favor of respondent. We affirm.

### FACTS

A judgment was rendered against Patricia C. Watkins and her husband, James E. Watkins, in favor of appellant Community Bank. As a judgment creditor, appellant sought to enforce the judgment through a sheriff's sale of Watkins' residence. A homestead exemption and numerous liens were recorded against the property. In its motion for sale, appellant listed numerous liens and encumbrances, including the amount allowed for the Watkins' homestead exemption. Appellant suggested the fair market value of the home was between $281,500 and $337,400.[1] Appellant's motion also stated that it

---

[1] An appraisal dated September 5, 1985, valued the home between $337,400 and $286,800. An appraisal dated March 20, 1986, valued the home between $331,200 and $281,500.

had complied with Code of Civil Procedure section 704.760, i.e., that it had listed any liens and encumbrances. In support of its statements to the court, appellant presented a preliminary title report, a supplement thereto and two appraisals.

The court ordered the property be "sold [for a] price of [not less than] $298,080.00 which is 90% of the fair market value . . . ."[2]

Respondent purchased the property for $351,100. Thereafter, respondent was notified by the Internal Revenue Service (IRS) that three IRS liens, totalling $103,465.93, had been recorded on the property. (Two liens totalling $86,155.32 were recorded prior to the sale and one lien in the sum of $17,310.61 was recorded prior to the distribution of the sale proceeds.) These liens had not been listed on the title reports and had not been listed by appellant in its motion; thus these encumbrances were not paid off from the proceeds of the sale. Had the first two liens been disclosed, the total amount of the liens, encumbrances, and homestead exemption would have totalled $337,304.15, a sum in excess of the fair market value established by the court. To clear title on the property and to prevent its sale by the IRS, respondent paid a total of $125,882.94 to the IRS.

There is no evidence appellant knowingly hid the existence of the liens. However, there is evidence that prior to the sale, appellant took the depositions of Mr. and Mrs. Watkins. During Mr. Watkins' deposition, he alluded to an IRS lien and stated he believed this lien had been cured.

Respondent brought this negligence suit against appellant. Respondent's summary judgment motion against appellant was granted and judgment entered accordingly. The judgment rendered against the bank was for the sum of $130,474.95 plus interest. This sum included the amount respondent paid to the IRS plus interest and attorney fees. Appellant appeals.

## DISCUSSION

■ "Summary judgments look behind the pleadings to determine if the claims or defenses of a party are sham or without any evidence to support the claim. 'The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . .' (Code Civ. Proc., § 437c, subd. (c).) . . . . We recognize that summary judgment procedures are viewed as 'drastic' [citations]; however, the pur-

---

[2]Ninety percent of $331,200 = $298,080.

pose of a summary judgment 'is to expedite litigation by avoiding needless trials' [citation]. If there are no triable issues, summary judgment is appropriate." (*Burton* v. *Security Pacific Nat. Bank* (1988) 197 Cal.App.3d 972, 976-977 [243 Cal.Rptr. 277].)

Here, respondent's motion for summary judgment was granted upon the trial court's conclusion that there were no triable issues of fact and as a matter of law, appellant was negligent.

■ "Section 669 of the Evidence Code sets forth the doctrine commonly called negligence per se. It provides that negligence of a person is presumed if [the person] violated a statute or regulation of a public entity, if the injury resulted from an occurrence that the regulation was designed to prevent, and if the person injured was within the class for whose protection the regulation was adopted." (*Elsworth* v. *Beech Aircraft Corp.* (1984) 37 Cal.3d 540, 544-545 [208 Cal.Rptr. 874, 691 P.2d 630].)

When appellant failed to list the IRS liens, appellant violated Code of Civil Procedure section 704.760, subdivision (c), which requires any liens and encumbrances be listed by the enforcing creditor. We first address whether this and other pertinent legislative enactments were designed to protect respondent and if his injury resulted from an occurrence which the laws were designed to protect. Our discussion relates only to a cause of action for negligence based upon a negligence per se theory.

■ Appellant brought its motion for sale pursuant to Code of Civil Procedure section 704.710 et seq. Contained within the Enforcement of Judgments Law, these homestead exemption statutes are designed to promote "the security of the home and [protect] it from the consequences of the owner's economic misfortune." (16 Cal. Law Revision Com. Rep. (Dec. 1982) p. 1092.) These laws promote the constitutional mandate to protect "from forced sale a certain portion of the homestead and other property of all heads of families." (Cal. Const. art. XX, § 1.5; *Swearingen* v. *Byrne* (1977) 67 Cal.App.3d 580, 584 [136 Cal.Rptr. 736].) In furthering this goal, the statutes provide that a creditor requesting that the court sell a residence subject to the homestead exemption must attest under oath to a "statement of the amount of any liens or encumbrances on the dwelling . . . ." (Code Civ. Proc., § 704.760, subd. (c).) The court is authorized to order the home sold only if proceeds from the sale are 90 percent or more of fair market value (Code Civ. Proc., § 704.800 subd. (b)) and that sum exceeds "the amount of the homestead exemption plus any additional amount necessary to satisfy all liens and encumbrances on the property . . . ." (Code Civ. Proc., § 704.800 subd. (a).) The proceeds of the sale are first applied to all liens and encumbrances. (Code Civ. Proc., § 704.850, subd. (a)(1).)

This statutory scheme contemplates that when a home is sold, all lienholders will be paid, the homeowners will not suffer from additional consequences of their economic misfortune, and the purchaser of such property will own the property free and clear of all liens and encumbrances.[3] In protecting homeowners,[4] these laws by necessity also protect purchasers who expect to buy an unencumbered home. Thus the Legislature included within the statutory scheme protections not only for debtor homeowners but all purchasers of homes, including respondent. ■ Respondent is included in the class of persons to be protected by the statutes as he was a purchaser of a home sold pursuant to this statutory scheme.

■ Code of Civil Procedure section 701.630, made applicable through section 704.780 to the forced sale of residences having homestead exemptions, extinguishes any liens upon sale. (2 Debt Collection Practice in California (Cont.Ed.Bar 1987) § 12.20, p. 801.) These provisions further illustrate the Legislature's intent to protect buyers of such property. Here, respondent was injured because the undisclosed liens were IRS tax liens, an exception to the general scheme. The failure to notify the IRS of the impending sale meant that the IRS liens would be extinguished only upon payment and not upon the sale of the property. (*Id.*, § 12.24, pp. 803-804; 26 U.S.C. §§ 6321, 6322, 6323, 7425(b)(1); *First American Title Ins. Co.* v. *U.S.* (9th Cir. 1988) 848 F.2d 969, 970, 972.)

■ Appellant suggests respondent is not within the class of persons to be protected because he is an experienced purchaser of distressed property. We find this suggestion unpersuasive. Respondent is like other purchasers of homes at sheriff's sales, experienced or inexperienced. He expected appellant as the enforcing creditor to abide by the dictates of the statutes and disclose all liens and encumbrances. Respondent's experience does not prevent him from reaping the benefits of the statutes designed for his protection.

---

[3]Appellant cites *Harvey* v. *Whyte* (1958) 158 Cal.App.2d 685 [323 P.2d 162] for the suggestion that the purchaser at a sheriff's sale is responsible "for any defects which may be present in the title purchased and the doctrine of caveat emptor applies to such Sheriff's sale." Appellant misconstrues the holding in *Harvey*. In *Harvey* the issue was whether the purchaser at an execution sale could sue the levying officer when the purchased property was owned by the debtor's corporation and not the debtor. The court held that no cause of action existed because the purchaser could not obtain an interest in the property since the debtor had no interest in the property. (*Id.* at p. 689; accord, *Noble* v. *Beach* (1942) 21 Cal.2d 91, 94 [130 P.2d 426].)

[4]*Van Bogaert* v. *Avery* (1969) 271 Cal.App.2d 492 [76 Cal.Rptr. 608], an estoppel case, held that the enforcing creditor who bore responsibility for the sale of a home is not an aggrieved party for purposes of setting aside the sale. In its discussion, the court stated that the purposes of the laws were to protect lienholders and homestead claimants. The court's discussion was limited to the issue before it and did not involve a negligence cause of action brought by a buyer of such properties, the issue before us.

Appellant also asserts respondent caused his own damages because of his actions after the sale. In proffering this argument appellant points to the fact that after respondent learned of the liens he was successful in having the surplus funds ($30,512.69) paid to the IRS, but that the IRS refused to apply all such sums to the liens attached to the parcel respondent purchased. These facts fail to support appellant's assertion. Rather, they indicate that respondent unsuccessfully attempted to mitigate his damages.

As to the other requirements necessary to show appellant failed to exercise due care, we need say very little. The statutory scheme prevents courts from ordering the sale of the residences if the liens and encumbrances thereon will not be paid off by the sale of the property. (Code Civ. Proc., §§ 704.800, 704.850.) Based upon the representations made to the court, respondent paid $351,100 for the property assuming all liens and encumbrances would be covered by the proceeds, and assuming he would take the property free and clear. Even though respondent examined the files and saw the title reports, he was relying on more than the reports. Respondent relied upon appellant's statements to the court that it had satisfied all statutory requirements. There is nothing in the record to indicate respondent had any independent knowledge of the liens. ■■■■ Appellant's failure to abide by the statute caused respondent's injuries.[5]

■■ We are puzzled by appellant's statements that no injury was caused by its actions because the property increased in value from the time of the appraisal to the time of sale and increased again subsequent to the sale. Respondent paid $351,100 for the property understanding this would be the total expenditure necessary to obtain the property free and clear. However, since appellant failed to disclose the existence of the IRS liens, respondent was forced to expend additional sums in order to obtain what he expected, i.e., the residence free and clear. This is a loss to him.

---

[5]Appellant's motion for sale was supported by a preliminary title report and a supplement attached thereto. It does not appear, however, appellant obtained title insurance from the company promulgating these reports. Insurance Code sections 12340.10 and 12340.11 and the face of the documents make it clear that title reports do not guarantee the contents of the reports and thus do not indicate all liens have been discovered and disclosed. (Hosack, Cal. Title Insurance Practice (Cont.Ed.Bar Supp. 1990) § 2.11, p. 17.) A preliminary title report is "only a representation of the terms under which a title insurance policy will be issued." (*Ibid.*; Augustine & Zarrow, 4 Cal. Real Estate Law & Practice (1974) § 92.131[3] rel. 21-10/86.) We find it ironic that appellant states it was justifiably ignorant of the liens because appellant relied upon the preliminary title reports, yet claims respondent should have known the title reports were not accurate when respondent examined the files. If, as appellant states it "had no reason to believe that the preliminary title report would *not* reflect liens in favor of the IRS in the same manner as a 'litigation report' " (a report believed to be more reliable), then respondent was entitled to the same belief.

The judgment is affirmed.

Boren, J., and Grignon, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 12, 1991.