[No. A074154. First Dist., Div. Five. Apr. 2, 1998.]

CALIFORNIA SERVICE STATION AND AUTOMOBILE REPAIR ASSOCIATION et al., Plaintiffs and Appellants, v. AMERICAN HOME ASSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Howard, Rice, Nemerovski, Canady, Falk & Rabkin, Jerome B. Falk, Jr., Therese M. Stewart, Carr, DeFilippo & Ferrell, Robert J. Yorio and James W. Lucey for Plaintiffs and Appellants.

Horvitz & Levy, Christina Imre, Peter Abrahams, Lynch, Gilardi & Grummer, Richard S. Gilardi and Michael P. O'Bresly for Defendant and Respondent.

## OPINION

**HANING, J.**—California Service Station and Automobile Repair Association (CSSARA), CSSARA Services, Inc., and CSSARA Business Insurance Trust appeal a judgment notwithstanding the verdict (JNOV) and alternative grant of a new trial overturning a jury verdict on their negligence action against respondent American Home Assurance Company. Appellants' claims were based on respondent's failure to disclose past dividend calculations for its workers' compensation policies when appellants agreed to market respondent's policies to their members. This appeal raises two issues regarding the JNOV: (1) whether respondent was liable to appellants based on a presumption of negligence arising out of a violation of section 2505 of title 10 of the California Code of Regulations;[1] and (2) whether it was liable under ordinary negligence principles. We conclude respondent was not liable under either theory and affirm.

### BACKGROUND

We report only those facts necessary for an understanding of the issues we deem dispositive. CSSARA is an industry association representing gas stations, car washes and garages that, among other things, markets insurance to its members. It uses the combined negotiating power of its membership to secure a variety of dividend-paying insurance policies that would otherwise be unavailable to its members. CSSARA is not itself insured under these policies. Each of its members pays its own premium and receives an individual policy. However, each member assigns all rights in the dividends to the CSSARA Business Insurance Trust, a wholly owned subsidiary of CSSARA. The trustee for the CSSARA Business Insurance Trust is CSSARA Services, Inc., also a CSSARA subsidiary. CSSARA receives a single annual dividend check from the insurer, and then distributes the dividends to its members.

In 1989 appellants ended a long relationship with CNA Insurance Company when they changed their insurance broker to Corroon & Black Insurance Services, Inc. Appellants had negotiated for two types of insurance through CNA: (1) a package consisting of property and liability insurance policies; and (2) dividend-paying workers' compensation insurance. Appellants directed Corroon & Black to find a new underwriter who could offer terms similar to those offered by CNA. Appellants had to quickly find a replacement for CNA in order to avoid an interruption in their ability to offer policies to their membership.

---

[1]All further regulation references are to title 10 of the California Code of Regulations.

Corroon & Black brought together appellants and respondent. Appellants quickly negotiated an agreement to offer to their members respondent's workers' compensation and liability insurance. During the negotiations respondent made statements about what kind of factors, known as loss development factors or LDF's, it had used in the past and would likely use in the future to calculate the workers' compensation policy dividends. However, it did not provide appellants with any formal written disclosure of those LDF's.

Regulation 2505 requires insurers offering dividend-paying workers' compensation policies to provide purchasers with a "Policyholder Dividend Disclosure Statement" under most circumstances. Respondent did not provide appellants with such a statement.

Respondent failed to pay any dividends at 18 months when appellants expected them to be paid. In calculating the dividend due at that time, it used much higher LDF's than appellants expected based on representations respondent made when the agreement was negotiated. Respondent claims that no dividends were due either then or when actual results were tabulated 66 months after the coverage began. Appellants believed that respondent's LDF's and other cost factors absorbed the potential dividend, and were significantly higher than those used by other insurers.

Appellants sued respondent and Corroon & Black seeking recovery of lost dividends and other damages, on breach of contract, breach of the implied covenant of good faith and fair dealing, and negligence theories. Appellants settled with Corroon & Black, and went to trial against respondent.

The jury found for respondent on appellants' cause of action for breach of contract, and specifically found that the parties did not agree to use CNA's formula for calculating dividends. It awarded appellants $3,330,139 for negligence and $167,816 for breach of the implied covenant of good faith and fair dealing.[2] The negligence verdict was returned on a special verdict form containing a simple interrogatory asking whether respondent was negligent, after the jury had been instructed on both ordinary negligence and the presumption of negligence arising under Evidence Code section 669[3] based on the violation of a statute, ordinance or regulation.

---

[2]The cause of action for breach of the implied covenant is not based on any violation of regulation 2505.

[3]Evidence Code section 669 reads: "(a) The failure of a person to exercise due care is presumed if: [¶] (1) He violated a statute, ordinance, or regulation of a public entity; [¶] (2) The violation proximately caused death or injury to person or property; [¶] (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation

The trial court granted respondent's posttrial motions for JNOV and a new trial on the negligence cause of action. This appeal concerns the trial court's *negligence* ruling in the JNOV and new trial order.[4]

## DISCUSSION

█ When reviewing a JNOV we resolve all conflicts in the evidence and draw all reasonable inferences therefrom in favor of the verdict. (*Henrioulle* v. *Marin Ventures, Inc.* (1978) 20 Cal.3d 512, 515 [143 Cal.Rptr. 247, 573 P.2d 465]; *Hauter* v. *Zogarts* (1975) 14 Cal.3d 104, 110 [120 Cal.Rptr. 681, 534 P.2d 377, 74 A.L.R.3d 1282].) In so ruling, we are not bound by the trial court's reasons; if correct upon any theory of applicable law, the JNOV must be affirmed. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19 [112 Cal.Rptr. 786, 520 P.2d 10].)

Appellants contend substantial evidence supports the jury's verdict under two theories: (1) simple negligence, and (2) the presumption of negligence created by Evidence Code section 669.[5] In support of the simple negligence theory, appellants assert that an insurer has an independent duty during arm's-length negotiations for dividend-paying insurance coverage to disclose the factors upon which the dividends are calculated.

Appellants' reliance on Evidence Code section 669 rests on the premise that the "analysis of whether a violation of a [regulation] constitutes negligence under the negligence per se doctrine focuses entirely on whether the

---

was designed to prevent; and [¶] (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted. [¶] (b) This presumption may be rebutted by proof that: [¶] (1) The person violating the statute, ordinance, or regulation did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law; or [¶] (2) The person violating the statute, ordinance, or regulation was a child and exercised the degree of care ordinarily exercised by persons of his maturity, intelligence, and capacity under similar circumstances, but the presumption may not be rebutted by such proof if the violation occurred in the course of an activity normally engaged in only by adults and requiring adult qualifications."

[4]Appellants also challenged: (1) the alternative grant of a new trial for the stated reason that their only evidence of damages was hearsay; and (2) an *in limine* ruling limiting damages. Because we affirm the JNOV, we do not decide these issues.

[5]The presumption of negligence arising out of a violation of a statute, ordinance, or regulation has also been called the "negligence per se" doctrine. However, "negligence per se" implies that the violation leads automatically to negligence liability, when in fact satisfaction of the elements of subdivision (a) of Evidence Code section 669 creates only a presumption of negligence that can be rebutted under the terms of subdivision (b). (See Holdych, *The Presumption of Negligence Rule in California: The Common Law and Evidence Code Section 669* (1980) 11 Pacific L.J. 907, 909-913.) Because "presumption of negligence" better describes the law in California, we use that term throughout this opinion.

elements of section 669 are met . . . . If those elements are established there is a presumption of negligence that, if unrebutted, gives rise to liability for negligence per se. That is the beginning and end of the analysis." Respondent contends section 669 merely shifts the burden of proof on a single element of a common law negligence action, i.e., the failure to exercise due care.

Before analyzing and resolving these contentions, we believe it helpful to point out potential theories of recovery appellants did *not* advance at trial and do not pursue on appeal. Appellants did not proceed on any theory of fraud, deceit, or intentional or negligent misrepresentation. Nor do they appeal the adverse judgment on their cause of action for breach of contract.

## I

Appellants' theory of simple negligence is based in part on theories of recovery appellants have chosen not to pursue. For example, they argue that respondent had a duty "not to make misleading or incomplete statements," and refer to respondent's broken "promises," "statements" and "repeated assurances," in essence claiming they were deceived or misled by respondent's failure to provide a dividend statement during contract negotiations. To the extent respondent may have broken any "promises" or violated any material "statements" or "repeated assurances," these assertions concern causes of action for breach of contract which are not before us, or fraud, deceit or intentional or negligent misrepresentation, which were never pursued by appellants. In fact, appellants *actively disavowed* any fraud, deceit or misrepresentation causes of action when pressed by respondent. Of course, if they had made such claims they would have had to prove that respondent intended to induce them to market its policies by intentionally concealing dividend information, or by means of a positive misrepresentation that was either intentional or negligent. (See, e.g., *Continental Airlines, Inc.* v. *Mc-Donnell Douglas Corp.* (1989) 216 Cal.App.3d 388, 402, 404 [264 Cal.Rptr. 779]; *Wilson* v. *Century 21 Great Western Realty* (1993) 15 Cal.App.4th 298, 306 [18 Cal.Rptr.2d 779] (*Wilson*).) They would also have had to prove that they relied on the concealment or misrepresentations in agreeing to market respondent's policies. (*Continental Airlines, Inc., supra,* at pp. 402, 404.) Appellants are not unsophisticated, and are represented by very able counsel, so the natural inference is that they were unable to muster such proof. This leaves appellants with the contention that an insurer has an independent duty during arm's-length negotiations for dividend-paying insurance coverage, to disclose the factors upon which the dividends are calculated.

## A.

Neither the Legislature nor the courts have created a duty of care requiring the disclosure of dividend calculation information during arm's-length negotiations for insurance contracts. ▇▇▇ Appellants claim respondent is liable because it did not disclose past dividend calculations when it agreed to underwrite workers' compensation policies appellants intended to market to their membership. The dividend calculations relate only to the final price of the policies, and have no bearing on the coverage provided. Therefore, appellants essentially assert that an insurer owes a duty to disclose information about premium pricing to potential policyholders, and is negligent if it fails to adequately disclose.

There is no duty of ordinary care to disclose pricing information during arm's-length contract negotiations. If a purchaser wishes to go forward without final agreement on pricing structure, the purchaser takes the risk that the final negotiated price may be higher than expected. There is also no special duty in the relationship between an insurer and a potential insured. The relationship between an insurer and a prospective insured is not a fiduciary relationship. "[A]n insured person's initial decision to obtain insurance and the corresponding decision of an insurer to offer coverage remain, at the inception of the contract at least, an arm's length transaction to be governed by traditional standards of freedom to contract." (*Gibson* v. *Government Employees Ins. Co.* (1984) 162 Cal.App.3d 441, 448 [208 Cal.Rptr. 511].)

Appellants cite a number of cases to support a broad principle that a negligence claim may arise out of the breach of a duty to disclose. None of these cases establishes a special duty applicable to an insurer negotiating the price of an insurance contract. Cases discussing negligent misrepresentation (e.g., *Randi W.* v. *Muroc Joint Unified School Dist.* (1997) 14 Cal.4th 1066, 1076 [60 Cal.Rptr.2d 263, 929 P.2d 582]) and breach of fiduciary duty (*Byrum* v. *Brand* (1990) 219 Cal.App.3d 926, 937-939 [268 Cal.Rptr. 609]) have no bearing on this negligence claim. They involve causes of action with different elements that create entirely distinguishable obligations to disclose. Duty of care is not an element of those causes of action. Cases relating to failure to warn of product defects (*Carlin* v. *Superior Court* (1996) 13 Cal.4th 1104, 1112-1113 [56 Cal.Rptr.2d 162, 920 P.2d 1347]; *Sindell* v. *Abbott Laboratories* (1980) 26 Cal.3d 588, 611 [163 Cal.Rptr. 132, 607 P.2d 924, 2 A.L.R.4th 1061]; *Tresemer* v. *Barke* (1978) 86 Cal.App.3d 656, 672 [150 Cal.Rptr. 384, 12 A.L.R.4th 27]) and failure to warn of dangerousness of a client to foreseeable victims (*Tarasoff* v. *Regents of University of*

*California* (1976) 17 Cal.3d 425, 433-434 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]; *Hedlund* v. *Superior Court* (1983) 34 Cal.3d 695, 705-706 [194 Cal.Rptr. 805, 669 P.2d 41, 41 A.L.R.4th 1063]) require one party to warn another of a risk of physical danger. Such a risk is not present in the negotiation of an insurance contract.

The other cases cited by appellants involve special duties inherent in the sale of real property that cannot be carried over into the context of the sale of an insurance policy. In *Little* v. *Community Bank* (1991) 234 Cal.App.3d 355 [286 Cal.Rptr. 4], appellant was a judgment creditor that enforced its judgment through a forced sale of the debtor's home. Respondent bought the house at the sheriff's sale, only to learn later that the IRS had liens on the property that survived the execution sale. We believe that the negligence cause of action in *Little* was based on a duty of care created by the Legislature when it enacted Code of Civil Procedure section 704.760, subdivision (c), requiring all liens and encumbrances to be listed by the enforcing creditor. As we explain below, no statute imposed such a duty in this case. *Newhall Land & Farming Co.* v. *Superior Court* (1993) 19 Cal.App.4th 334 [23 Cal.Rptr.2d 377] involves the common law duty requiring a seller of real property to disclose to a prospective purchaser all facts materially affecting the value or desirability of the property. (*Id.* at p. 349.) *Wilson, supra,* 15 Cal.App.4th 298, involves the corresponding duty of a real estate broker towards the prospective purchaser to inspect and disclose similar facts. These duties are not analogous to respondent's failure to disclose an element of the price calculation in its insurance policy.

The only similar duty arising from a relationship between an insurer and its insured involves representations about the coverage created by an insurance policy, but that duty should be distinguished from a duty to disclose information about the calculation of premiums. ■ "[A]s a general proposition, an insurance agent does not have a duty to volunteer to an insured that the latter should procure additional or different insurance coverage. . . . . The rule changes, however, when—but only when—one of the following three things happens: (a) the agent misrepresents the nature, extent or scope of the coverage being offered or provided . . . , (b) there is a request or inquiry by the insured for a particular type or extent of coverage . . . , or (c) the agent assumes an additional duty by either express agreement or by 'holding himself out' as having expertise in a given field of insurance being sought by the insured . . . ." (*Fitzpatrick* v. *Hayes* (1997) 57 Cal.App.4th 916, 927 [67 Cal.Rptr.2d 445], fn. omitted.) The concerns over insurer misrepresentations about coverage parallel the concerns raised about hidden defects in any product sold to the public. ■ Here, however, the only failure to disclose concerned the manner of calculating the

premiums, and that should be the subject of negotiation unaided by an obligation of disclosure of information that appellants could have obtained before entering into the agreements.

### B.

■ Appellant contends the California Insurance Commissioner has created a duty of care through regulation 2505. We conclude that the courts and the Legislature may create a negligence duty of care, but an administrative agency cannot independently impose a duty of care if that authority has not been properly delegated to the agency by the Legislature.

The courts have always had the responsibility to define negligence duties in their capacity to decide legal questions. "[T]he existence of a legal duty on the part of a person in the defendant's situation to the class of persons of which the plaintiff is a member [citation] is primarily for the court to determine, for a judicial declaration of duty may constitute a statement of law which operates as a precedent." (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 748, p. 83, earlier version cited approvingly by *Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 572, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624].) The Legislature has the same authority. (See, e.g., *Vesely* v. *Sager* (1971) 5 Cal.3d 153, 164 [95 Cal.Rptr. 623, 486 P.2d 151] (*Vesely*) ["A duty of care . . . may of course be found in a legislative enactment which does not provide for civil liability."]; *J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799, 803 [157 Cal.Rptr. 407, 598 P.2d 60] ["A duty of care may arise through statute . . . ."].)

■ ▀ ■ An administrative agency, however, does not have the same capacity to create a duty of care.[6] The Legislature is responsible for the formulation of fundamental policy. "An unconstitutional delegation of legislative power occurs when the Legislature confers upon an administrative agency unrestricted authority to make fundamental policy decisions. [Citations.] 'This doctrine rests upon the premise that the legislative body must itself effectively resolve the truly fundamental issues. It cannot escape responsibility by explicitly delegating that function to others or by failing to establish an effective mechanism to assure the proper implementation of its policy decisions.'" (*People* v. *Wright* (1982) 30 Cal.3d 705, 712 [180 Cal.Rptr. 196, 639 P.2d 267], quoting *Kugler* v. *Yocum* (1968) 69 Cal.2d

---

[6]An administrative agency's powers are not as broad as those of a municipality. "A municipality, under the power delegated to it by the state, may enact ordinances creating duties for the protection of persons and property, and it is very generally held that those who violate such ordinances are liable for resulting injury to others." (*Finnegan* v. *Royal Realty Co.* (1950) 35 Cal.2d 409, 416 [218 P.2d 17].)

371, 376-377 [71 Cal.Rptr. 687, 445 P.2d 303]; *State Bd. of Education* v. *Honig* (1993) 13 Cal.App.4th 720, 750 [16 Cal.Rptr.2d 727].) The creation of a negligence duty of care involves fundamental policy decisions (see *Bily* v. *Arthur Young & Co.* (1992) 3 Cal.4th 370, 399 [11 Cal.Rptr.2d 51, 834 P.2d 745, 48 A.L.R.5th 835]) that cannot be delegated to an administrative body. "An administrative agency cannot by its own regulations create a remedy which the Legislature has withheld. [Citations.]" *(Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1389 [241 Cal.Rptr. 67, 743 P.2d 1323].) Therefore, in the absence of a common law duty of care, we look to the statutes authorizing an administrative regulation to determine whether a negligence duty of care has been created.

The Legislature did not create a negligence duty of care in the Insurance Code provisions authorizing regulation 2505. Those provisions prohibit misrepresentations, but do not establish a negligence duty of care.

Regulation 2505's mandate that workers' compensation insurers use "POLICYHOLDER DIVIDEND DISCLOSURE STATEMENTS" is authorized by statutes prohibiting misrepresentations of policies, found at Insurance Code section 780, and the Unfair Practices Act found at Insurance Code sections 790 through 790.10. Regulation 2505 directly relies on the authority of Insurance Code section 790.10, which gives the California Insurance Commissioner the power to promulgate regulations as necessary to implement the Unfair Practices Act. (Barclay's Cal. Code Regs. (1977) note foll. reg. 2505, p. 626.) The Unfair Practices Act prohibits "making any false or misleading statement as to the dividends or share of surplus previously paid on similar policies." (Ins. Code, § 790.03, subd. (a).) Regulation 2505 also references Insurance Code section 780 (Barclay's Cal. Code Regs., *supra*, note foll. reg. 2505, p. 626), which prohibits misrepresentations about terms of a policy (Ins. Code, § 780, subd. (a)) and future dividends (Ins. Code, § 780, subd. (c)).

These statutes do not create a negligence duty of care. They prohibit misrepresentations, and are thus analogous to the torts of fraud and deceit, not the tort of negligence. The failure to create a negligence duty of care is illuminated by a comparison of these statutes with the statutes that created a duty of care in *Nowlon* v. *Koram Ins. Center, Inc.* (1991) 1 Cal.App.4th 1437 [2 Cal.Rptr.2d 683] *(Nowlon)*. In *Nowlon*, a presumption of negligence was based on a violation of "Insurance Code sections 703, 1761 and 1776, and Penal Code section 439 [which] prohibit the sale of insurance for an insurance company which is not admitted to transact business in California, unless the sale is made through a surplus line broker." *(Nowlon* at p. 1441.) Violation of those statutes would not be a misrepresentation. Instead, the violation would be a failure to meet the professional standards required of a

broker or agent. Thus the statutes at issue in *Nowlon* impose a duty of professional care, the violation of which gives rise to a negligence cause of action. The violation of the statutes underlying regulation 2505, in contrast, are deemed to be misrepresentations, and the proper remedy would be a misrepresentation cause of action.[7]

## II

In their reliance on Evidence Code section 669 and its application to regulation 2505, appellants apparently switch gears. They state they "do *not* claim that [regulation 2505] *itself* created any tort duty to [appellants]. Nor do [appellants] contend that [regulation 2505] created a private right of action." (Original italics.) They contend, as previously noted, that the "analysis of whether a violation of a [regulation] constitutes negligence under the negligence per se doctrine focuses entirely on whether the elements of section 669 are met . . . . If those elements are established there is a presumption of negligence that, if unrebutted, gives rise to liability for negligence per se. That is the beginning and end of the analysis." Assuming appellants have satisfied the four requirements of section 669, subdivision (a), we conclude this does not alone entitle them to a presumption of negligence, unless they have an underlying negligence action.

Cases decided before the enactment of Evidence Code section 669 distinguished between a legal duty to avoid negligent conduct, and the standard of care established by a statute, administrative regulation, or ordinance. Section 669 was enacted in 1967 to codify existing law regarding the presumption of negligence (Cal. Law Revision Com. com., 29B, pt. 2 West's Ann. Evid. Code (1995 ed.) Foll. § 669, p. 264), so preenactment opinions contribute to our understanding of the presumption of negligence doctrine. Preenactment cases recognized that "liability is . . . dependent upon proof that a duty was owed to persons in the class of the plaintiff . . . ." (*Satterlee* v. *Orange Glenn School Dist.* (1947) 29 Cal.2d 581, 590 [177 P.2d 279], overruled on other grounds in *Alarid* v. *Vanier* (1958) 50 Cal.2d 617, 622-624 [327 P.2d 897].) They recognize that the presumption of negligence concerns the *standard* of care, not the *duty* of care. "A [negligence] suit for damages is based on the theory that the conduct inflicting the injuries is a common-law

---

[7]*United Farm Workers of America* v. *Superior Court* (1975) 47 Cal.App.3d 334, 339-342 [120 Cal.Rptr. 904], overruled on other grounds in *Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1273 [10 Cal.Rptr.2d 538, 833 P.2d 545], permitted a cause of action for violation of Labor Code sections that prohibited misrepresentations. The opinion discussed Evidence Code section 669, but held that plaintiffs had properly pled a cause of action for damages for violation of the Labor Code provisions. Therefore, the case does not address the necessity of a negligence duty in the application of the presumption of negligence.

tort, in this case the failure to exercise the care of a reasonable man at a boulevard stop. The significance of the statute in a civil suit for negligence lies in its formulation of a standard of conduct that the court adopts in the determination of such liability. [Citations.]" (*Clinkscales* v. *Carver* (1943) 22 Cal.2d 72, 75 [136 P.2d 777].) *Clinkscales* went on to explain that "When the court accepts the standard it rules in effect that defendant's conduct falls below that of a reasonable man as the court conceives it." (*Id.* at p. 76.)

Cases decided after Evidence Code section 669 was enacted maintain the analytical distinction between separation of the creation of a duty of care and the creation of a standard of care. The first Supreme Court case to interpret section 669 continued this distinction. *Vesely, supra,* 5 Cal.3d 153 explained that "A duty of care, and the attendant standard of conduct required of a reasonable man, may of course be found in a legislative enactment which does not provide for civil liability. [Citations.]" (*Id.* at p. 164.) This distinction was observed in *Kindt* v. *Kauffman* (1976) 57 Cal.App.3d 845 [129 Cal.Rptr. 603] (disapproved on other grounds in *Ewing* v. *Cloverleaf Bowl* (1978) 20 Cal.3d 389, 401, fn. 8 [143 Cal.Rptr. 13, 572 P.2d 1155]). "A criminal prohibition becomes a rule of civil liability only because the courts under common law principles accept it as a controlling standard. [Citations.] As in *Vesely*, the prime question is still whether the defendant owes a duty of care to the injured person, and the existence of a criminal statute punishing the defendant's conduct is but one element in the perception of duty." (*Kindt, supra,* at p. 854.)

*Sierra-Bay Fed. Land Bank Assn.* v. *Superior Court* (1991) 227 Cal.App.3d 318 [277 Cal.Rptr. 753] and *Crusader Ins. Co.* v. *Scottsdale Ins. Co.* (1997) 54 Cal.App.4th 121 [62 Cal.Rptr.2d 620] held that an underlying claim of ordinary negligence must be viable before the presumption of negligence of Evidence Code section 669 can be employed. *Sierra-Bay* explains that ". . . it is the tort of negligence, and not the violation of the statute itself, which entitles a plaintiff to recover civil damages. In such circumstances the plaintiff is not attempting to pursue a private cause of action for violation of the statute; rather, he is pursuing a negligence action and is relying upon the violation of a statute, ordinance, or regulation to establish part of that cause of action. Nearly all the cases in which the presumption of negligence under Evidence Code section 669 has been applied involve what may be termed 'safety' statutes, ordinances or regulations, that is, governmentally designed standards of care intended to protect a particular class of persons from the risk of particular accidental injuries. [Citations.]" (*Sierra-Bay, supra,* at pp. 333-334, fns. omitted.) *Sierra-Bay* involved allegations related to plaintiff's default on loans secured by deeds of trust on real property, which the Court

of Appeal remarked "do not even hint at a viable cause of action for negligence under the law of this state." (*Id.* at p. 334.) *Crusader* elaborates on the limitation of the role of the presumption of negligence in supporting a negligence cause of action. "This . . . concept involves the use of statutes to establish the elements of common law causes of action. The use of statutes as evidence of the standard of care in a negligence action is a common example. In such a case, the statute does not create a new private right to sue. The statute instead serves the subsidiary function of providing evidence of an element of a preexisting common law cause of action." (*Crusader, supra,* at p. 125.)

Academic commentators also support the limitation of the presumption to negligence actions, and oppose its extension to civil wrongs not based upon negligence. Prosser concluded that "the violation of a statute is not always to be classified as negligence. It may be treated as trespass, conversion, fraud, nuisance, libel or slander, malicious prosecution or perhaps any other tort. All of the rules, qualifications, limitations, exceptions and other variations applied to that particular tort in ordinary cases are picked up and incorporated, and are applied to the action to the extent that they are consistent with the language of the statute and its apparent purpose." (Prosser, *Contributory Negligence as Defense to Violation of Statute* (1948) 32 Minn. L.Rev. 105, 109-110; see *Dart* v. *Pure Oil Co.* (1947) 223 Minn. 526, 532 [27 N.W.2d 555, 558, 171 A.L.R. 885].) A more recent comprehensive analysis of Evidence Code section 669 agreed. "Since the presumption arises to determine the existence of negligence, it should not apply to statutes adopted to protect people against certain types of harm where the analogous tort is not that of negligence. The analogous tort may be battery, fraud, trespass, intentional infliction of emotional distress or some other tort. [Citation.] A court may, of course, allow a tort action on behalf of a person injured as a result of a violation of such a statute, Restatement (Second) of Torts § 874A (1979), but Evidence Code section 669 should not apply since the violation does not involve the tort of negligence." (Holdych, *The Presumption of Negligence Rule in California: The Common Law and Evidence Code Section 669, supra,* 11 Pacific L.J. at p. 924, fn. 99.)

The cases cited by appellants in their argument that Evidence Code section 669 may create negligence liability where it otherwise may not have existed are either inapposite or actually support the requirement of an underlying negligence cause of action. *Transamerica Title Ins. Co.* v. *Green* (1970) 11 Cal.App.3d 693 [89 Cal.Rptr. 915, 44 A.L.R.3d 543] is inapposite. In that case, the court did not apply the presumption of negligence, because it held that the case was governed by a statutory private right of action

created by Government Code section 8214 against notaries failing to meet proper requirements for establishing identification. (*Transamerica Title, supra*, at p. 703.) *Nowlon* supports the requirement of an underlying negligence claim. *Nowlon* acknowledges that "Evidence Code section 669 applies to *negligence* in business transactions resulting in injury to economic interests as well as to personal injury actions. [Citations.]" (*Nowlon, supra*, 1 Cal.App.4th at p. 1442, fn. 4, italics added.) In recognizing that plaintiff had a potential negligence claim, *Nowlon* found that the defendant broker owed a duty of care to the injured plaintiff. (*Id.* at p. 1447.) In *Huang* v. *Garner* (1984) 157 Cal.App.3d 404 [203 Cal.Rptr. 800], the court held that the presumption of negligence may be applied in a cause of action for professional negligence. (*Id.* at pp. 414-416.) That holding is consistent with our conclusion that a defendant must possess an underlying negligence action before section 669 may be applied.

By a dubious process of head-counting, both parties cite the recent decision of our Supreme Court in *Cheong* v. *Antablin* (1997) 16 Cal.4th 1063 [68 Cal.Rptr.2d 859, 946 P.2d 817] as support for their divergent positions on the application of Evidence Code section 669. The primary issue in *Cheong* was whether a local ordinance created a duty of care and supplanted the assumption of risk doctrine in an action by an injured skier against his skiing companion. *Cheong* resulted in five separate opinions: (1) a majority opinion by Justice Chin, with Chief Justice George and Justices Baxter, Werdegar and Brown concurring; (2) a concurring opinion by Justice Mosk; (3) a concurring opinion by Justice Kennard; (4) a concurring opinion by Justice Werdegar, joined by the Chief Justice; and (5) a separate concurrence with his own majority opinion by Justice Chin, joined by Justices Baxter and Brown. We are not as adept as the parties at head-counting, and the fact that both parties advance the same case to support opposite views, serves to reinforce our belief that *Cheong* provides no clear guidance on the issue here. The majority opinion in *Cheong* clearly states that the court concluded it "need not resolve the point [concerning section 669]," since it also concluded that the elements of section 669, subdivision (a) had not been met in that case. (*Cheong, supra*, at p. 1071.)

Therefore, we conclude the Evidence Code section 669 presumption of negligence applies only after determining that the defendant owes the plaintiff an independent duty of care, which has not been demonstrated here.

In conclusion, we emphasize again that appellants are not claiming fraud, *deceit or misrepresentation* by respondent. Appellants were not forced into this agreement. They were free at all times prior to entering into the

agreement to request specific information concerning the calculation of dividends. If the response was unsatisfactory, they were free to look elsewhere for insurance.

DISPOSITION

The judgment is affirmed.

Peterson, P. J., and Jones, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 15, 1998. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.