Filed 5/27/21 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ANAEIS ISSAKHANI, | B301746 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC623438) |
| v. | |
| SHADOW GLEN HOMEOWNERS ASSOCIATION, INC., | ORDER MODIFYING OPINION |
| Defendant and Respondent. | NO CHANGE IN THE JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on April 30, 2021, be modified as follows:

1. On page 13, in the first full paragraph beginning with the word "Thus," delete the word "new" and insert the word "no" in its place.

* * *

There is no change in the judgment.

_____

ASHMANN-GERST, Acting P. J.   CHAVEZ, J.   HOFFSTADT, J.

Filed 4/30/21 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ANAEIS ISSAKHANI, | B301746 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC623438) |
| v. | |
| SHADOW GLEN HOMEOWNERS ASSOCIATION, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Melvin D. Sandvig, Judge.  Affirmed.

Gusdorff Law and Janet Gusdorff; Aghabegian & Associates and Alan Aghabegian for Plaintiff and Appellant.

Horvitz & Levy, Daniel J. Gonzalez and Mitchell C. Tilner for Defendant and Respondent.

\* \* \* \* \* \*

A pedestrian who decided to jaywalk across a five-lane highway at night was struck by a car. The pedestrian sued the owner of the condominium complex she was trying to visit for negligence and premises liability for having too few onsite parking spaces for guests. This appeal therefore presents the question: Does a landowner owe a duty of care to invitees to provide adequate onsite parking, either (1) under common law principles, or (2) by virtue of a 1978 city ordinance that rezoned the complex's specific parcel for multifamily dwellings and conditioned that rezoning on providing a specific number of guest parking spaces? We conclude that the answer to both questions is "no." We accordingly affirm the trial court's grant of summary judgment to the condominium complex.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

After nightfall on June 10, 2014, Anaeis Issakhani (plaintiff) parked her car on the far side of a five-lane street. Rather than walk to the next marked crosswalk several hundred feet away, she jaywalked. She was struck by a car, and sustained a traumatic brain injury along with several skull fractures.

At the time she was struck, plaintiff was crossing the street to get to the Shadow Glen condominium complex where her friend lived. The complex has 170 onsite parking spaces, and they are marked as "Reserved" for residents or as "Visitor" for guests. Before parking on the street, plaintiff had tried to find a parking space on site; specifically, she followed another car through the complex's security gate and then drove around for two or three minutes before deciding there was no available space.

2

The Shadow Glen complex was built in 1979 as a 68-unit housing development in Sun Valley, California. Because the parcel was originally zoned for single and dual family housing, the complex's original developer applied to the City of Los Angeles (the City) to have the parcel rezoned as a multiple dwelling zone. As required by the City's municipal code, the developer's application was considered by the City's planning department, by a hearing examiner, by the City's planning commission, and ultimately by the Los Angeles City Council (City Council). Because the City's zoning map is set forth in a City ordinance, a City Council-enacted ordinance is required to rezone a parcel.

In enacting ordinance No. 151,411, the City Council granted the developer's application on five conditions[1] that the City deemed "necessary to protect the best interests of and assure a development more compatible with the surrounding neighborhood"—namely, that (1) "[n]o building located on the site . . . exceed two stories or 25 feet in height," (2) "[a]ll open areas not used for buildings, driveways, parking areas, recreational facilities, or walks . . . be attractively landscaped" and "equipped with automatic sprinklers," (3) "[a] 10-foot landscaped buffer setback . . . be provided along [the five-lane street]," and populated with trees of a specified height and at a specified density, (4) "[a]ll lighting . . . be directed onto the site . . . to eliminate any glare to adjoining residential properties," and (5) "guest parking" be "provide[d]" "at a ratio of one-half space per dwelling unit in excess" of that otherwise required by the

---

[1]     In the lingo used in the zoning provisions of the City's municipal code, these conditions are called "'Q' Qualified classifications."

municipal code. Because the complex was to have 68 units, ordinance No. 151,411 requires 34 "guest parking" spaces.

After construction was completed, the City issued a Certificate of Occupancy that reflected 170 parking spaces, which was 13 spaces more than required by the municipal code and ordinance No. 151,411.

By the time of the accident, the complex still had 170 parking spaces but only six of them were marked as "Visitor" spaces.

## II.    Procedural History

On June 10, 2016, plaintiff sued the Shadow Glen Homeowners Association, Inc. (the Association), which is the current owner of the Shadow Glen complex. In the operative, second amended complaint, plaintiff asserts claims for negligence and premises liability. Both claims rest on the premise that the Association's failure to maintain the number of guest parking spaces mandated by ordinance No. 151,411 "created a foreseeable risk of harm for the Condominium's guests."

The Association moved for summary judgment. Following briefing and a hearing, the trial court granted summary judgment on the grounds that the Association owed plaintiff no duty under the common law or under ordinance No. 151,411.[2]

Following the entry of judgment, plaintiff filed this timely appeal.

---

[2]    The trial court's subsequent order stated that summary judgment was also granted on the ground that plaintiff could not prove causation.

4

## DISCUSSION

Plaintiff argues that the trial court erred in granting summary judgment for the Association. A defendant is entitled to summary judgment if it can "show that there is no triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c).)[3] The defendant bears the initial burden of establishing that the plaintiff's cause of action has "no merit" by showing that the plaintiff cannot establish "[o]ne or more elements of [her] cause of action." (*Id.*, subds. (o) & (p)(2).) If this burden is met, the "burden shifts" to the plaintiff "to show that a triable issue of one or more material facts exists as to that cause of action . . . ." (*Id.*, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.)

Plaintiff's claims for negligence and premises liability have the same elements—namely, (1) "a legal duty of care," (2) "breach of that duty," and (3) "proximate cause resulting in injury." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158 (*Kesner*).) Thus, if the Association does not owe plaintiff a duty of care, it is entitled to summary judgment.

We independently decide whether summary judgment is appropriate and whether a duty of care exists. (*Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 273 [summary judgment]; *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 57 [duty of care].) We accordingly owe no deference to the trial court's rulings or reasoning. (*Burgueno v. Regents of University of California* (2015) 243 Cal.App.4th 1052, 1057.)

---

[3] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

## I. Analysis of Duty of Care

A duty of care exists when one person has a legal obligation to prevent harm to another person, such that breach of that obligation can give rise to liability. (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 209 (*Brown*); *Paz v. State of California* (2000) 22 Cal.4th 550, 559 (*Paz*); *Coffee v. McDonnell-Douglas Corp.* (1972) 8 Cal.3d 551, 559, fn. 8; *Annocki v. Peterson Enterprises, LLC* (2014) 232 Cal.App.4th 32, 37 (*Annocki*).) Whether a duty of care exists is not a matter of plucking some immutable truth from the ether; instead, the existence of a particular duty of care reflects a determination that the ""sum total"" of ""considerations of [public] policy [should] lead the law to say that the particular plaintiff is entitled to protection."" (*Paz*, at p. 559.; *Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 771 (*Cabral*); *Scott v. Chevron U.S.A.* (1992) 5 Cal.App.4th 510, 515.)

In determining whether public policy warrants the creation of a duty of care, courts can look to the public policy (1) found in the common law (*Cal. Serv. Station Etc. Ass'n. v. Am. Home Assur. Co.* (1998) 62 Cal.App.4th 1166, 1175 (*Cal. Serv. Station*) ["The courts have always had the responsibility to define negligence duties . . ."]), and (2) embodied in statutes, regulations, and the like. (*Vesely v. Sager* (1971) 5 Cal.3d 153, 164 (*Vesely*) ["A duty of care . . . may . . . be found in a legislative enactment"], overruled on other grounds as stated in *Ennabe v. Manosa* (2014) 58 Cal.4th 697, 707; *J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799, 803 ["A duty of care may arise through statute . . ."].)

### A. *Common law-based duty*

An owner of land has a common law duty "to maintain land in [its] possession and control in a reasonably safe condition" "as to avoid exposing others to an unreasonable risk of injury." (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674, overruled on other grounds as stated in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527; *Barnes v. Black* (1999) 71 Cal.App.4th 1473, 1478 (*Barnes*); *Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1156; see generally Civ. Code, § 1714, subd. (a) [codifying this common law duty].) Because plaintiff alleges that she was struck by a car in the street due to the Association's failure to provide enough onsite parking for guests, the question in this case becomes: Does the landowner's common law duty of care entail protecting an invitee against injuries incurred off site due to an alleged deficiency on the landowner's property?[4]

It certainly *can*. The landowner's "'duty of care encompasses a duty to avoid exposing persons to risks of injury that occur off site *if the landowner's property is maintained in such a manner as to expose persons to an unreasonable risk of injury off[]site.*'" (*Kesner, supra*, 1 Cal.5th at p. 1159, quoting *Barnes, supra*, 71 Cal.App.4th at p. 1478, italics added; *McDaniel v. Sunset Manor Co.* (1990) 220 Cal.App.3d 1, 7 (*McDaniel*) ["The

---

4      This case therefore presents a different question than cases examining whether a landowner's duty of care extends to deficiencies located on property adjacent to—but not on—the landowner's property. (E.g., *Lopez v. City of Los Angeles* (2020) 55 Cal.App.5th 244, 256 (*Lopez*) [defect on abutting public sidewalk]; *Selger v. Steven Bros.* (1990) 222 Cal.App.3d 1585, 1588 (*Selger*) [same]; *Schaefer v. Lenahan* (1944) 63 Cal.App.2d 324, 325-326 [same]; *Dennis W. Williams v. Foster* (1989) 216 Cal.App.3d 510, 515 [same].)

fact that the injuries occurred on the adjacent property does not automatically bar recovery"].)  But whether it *should* in a specific circumstance turns on the considerations articulated by our Supreme Court in *Rowland v. Christian* (1968) 69 Cal.2d 108, 113 (*Rowland*), partially superseded by statute on other grounds as stated in *Smith v. Freund* (2011) 192 Cal.App.4th 466, 473, fn. 5. (*Barnes*, at p. 1479 ["The *Rowland* factors determine the scope of a duty of care whether the risk of harm is situated on site or off site"]; cf. *Brown*, *supra*, 11 Cal.5th at p. 217 [*Rowland* factors "not designed as a freestanding means of establishing duty" in a specific circumstance where, unlike here, there is no underlying duty running between the parties that might apply].)

We conclude that a landowner's common law duty of care does not encompass a duty to provide onsite parking for invitees in order to protect them from traffic accidents occurring off site as they travel to the premises, and we do so for two reasons:  (1) such a duty is foreclosed by precedent, and (2) even if not foreclosed, the so-called *Rowland* factors counsel against such a duty.

1. *Precedent*

In *Vasilenko v. Grace Family Church* (2017) 3 Cal.5th 1077 (*Vasilenko*), our Supreme Court held that "a landowner who does no more than site and maintain [an offsite] parking lot that requires invitees to cross a public street to reach the landowner's premises does not owe a duty to protect those invitees from the obvious dangers of the public street."  (*Id.* at pp. 1092, 1097.)

*Vasilenko* forecloses imposing a duty upon a landowner to provide invitees with onsite parking in order to protect them from the dangers of crossing nearby streets to get to the property.  If, as plaintiff contends, a landowner had a duty to provide onsite

8

parking to invitees, the landowner in *Vasilenko* would have automatically breached that duty when it directed its invitees to offsite parking facilities; there would have accordingly been no reason for *Vasilenko* to examine whether, under the *Rowland* factors, a landowner had a duty to safely shepherd those invitees onto its property from those facilities. In other words, the only reason *Vasilenko exists* is because a landowner owes no duty to provide onsite parking to invitees. *Vasilenko* even made this explicit: "[L]andowners are not required to provide parking for their invitees." (*Vasilenko*, *supra*, 3 Cal.5th at p. 1090.)

What is more, *Vasilenko* is merely the most recent in a longer line of cases that have consistently refused to impose a duty upon landowners to provide onsite parking to protect their invitees from the dangers of crossing nearby streets to access the property. In *McGarvey v. Pacific Gas & Elec. Co.* (1971) 18 Cal.App.3d 555 (*McGarvey*), the plaintiff was injured when one of the defendant's employees was making a U-turn on an adjacent street, a maneuver necessitated by the absence of any onsite parking for employees. *McGarvey* rejected the plaintiff's argument that the defendant had "a duty . . . to provide . . . adequate [onsite] automobile parking facilities for all employees" and "customers." (*Id.* at pp. 558, 562.) In *Seaber v. Hotel Del Coronado* (1991) 1 Cal.App.4th 481 (*Seaber*), the plaintiff was killed in a crosswalk as he traveled from a hotel's offsite parking lot to the hotel, a task necessitated by the absence of any onsite guest parking. *Seaber* rejected plaintiff's argument that the hotel was liable for plaintiff's death, a holding that would make no sense if the hotel had a precursor duty to provide onsite parking for its guests. (*Id.* at pp. 484-485, 492-493.)

9

Although a landowner's duty of care encompasses a more specific duty not to maintain conditions on its property that exacerbate the dangers of invitees entering or exiting the property (*Swanberg v. O'Mectin* (1984) 157 Cal.App.3d 325, 330 [obstructing shrubbery makes exiting the property more dangerous]; *Annocki*, *supra*, 232 Cal.App.4th at pp. 38-39 [layout of onsite parking lot encourages invitees to make a dangerous left turn when exiting the property]; *Constantinescu v. Conejo Valley Unified School Dist.* (1993) 16 Cal.App.4th 1466, 1473-1474 [layout of onsite parking lot creates "'snarl-ups'" and congestion that make nearby streets more dangerous], italics omitted), *McDaniel*, *Seaber* and *Vasilenko* necessarily reject the notion that the absence of onsite parking *by itself* amounts to a "condition" on the property that exacerbates the offsite danger to invitees and gives rise to an actionable duty.

2.     *Analysis of the Rowland factors*

The so-called *Rowland* factors fall into two broad categories—namely, (1) foreseeability-related factors, and (2) other "public policy factors." (*Cabral*, *supra*, 51 Cal.4th at pp. 774, 781.) There are three foreseeability-related factors; they are (1) "the foreseeability of harm to the plaintiff," (2) "the degree of certainty that the plaintiff suffered injury," and (3) "the closeness of the connection between the defendant's conduct and the injury suffered." (*Rowland*, *supra*, 69 Cal.2d at p. 113; *Cabral*, at p. 774.) In assessing these foreseeability-related factors, the focus is general rather than specific: We are to ask whether the "kind of harm experienced" is "generally" foreseeable from the "category of negligent conduct at issue" rather than "whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct." (*Ballard v. Uribe* (1986) 41

Cal.3d 564, 572, fn. 6.)  There are four public policy factors; they are (1) "the policy of preventing future harm," (2) "the moral blame attached to the defendant's conduct," (3) "the extent of the burden to the defendant and [the] consequences to the community of imposing a duty to exercise care with resulting liability for breach," and (4) "the availability, cost, and prevalence of insurance for the risk involved."  (*Rowland*, at p. 113; *Cabral*, at p. 781.)

The foreseeability-related factors counsel against imposing a duty upon landowners to provide onsite parking to avoid injury to invitees as they travel from offsite parking locales.  To be sure, as in *Vasilenko*, the first two foreseeability factors favor imposing a duty to provide onsite parking.  That is because it is "foreseeable that an invitee" forced to park off site due to the lack of sufficient onsite parking—like the invitee in *Vasilenko* who was "directed to park in an overflow lot on the other side of a public street"—"might be struck by oncoming traffic while crossing the street" and because the plaintiffs in both cases certainly suffered injury when struck by cars.  (*Vasilenko*, *supra*, 3 Cal.5th at p. 1085.)  However, also as in *Vasilenko* and as plaintiff concedes, the third foreseeability factor counsels strongly against imposing a duty.  That is because the "connection between the [landowner-]defendant's conduct and the injury suffered" is "attenuated" rather than "close."  (*Id.*, at pp. 1083, 1086.)  If, as in *Vasilenko*, the connection was too attenuated because the invitee's injury was most directly the product of his "decision as to when, where, and how to cross" the street as well as the driver's "ability to see and react to crossing pedestrians" (*id.*, at p. 1086), the connection is even more attenuated in this case, where it was the visitor's decision—rather than the

11

landowner's—to select an offsite parking space on the far side of a busy street.

The public policy factors also counsel against imposing a duty upon landowners to provide onsite parking to avoid injury to invitees as they travel from offsite parking locales. Imposing a duty to provide sufficient onsite parking to accommodate all invitees would not be especially effective in preventing future harm. Most commercial and residential properties actively used by people consist of structures along with a finite number of parking spaces. Short of requiring landowners to bulldoze structures or excavate and build underground structures to create *more* parking spaces, imposing a duty upon landowners to set aside enough parking spaces for all invitees is likely to do nothing more than shift the identity of *who* is forced to park off site—instead of invitees, it may instead be residents and employees who have to park off site. But shifting the identity of who has to park off site would not do much to prevent future harm in the aggregate. Conversely, the persons best suited to prevent future harm from street-crossing accidents, *Vasilenko* noted, are the "drivers[] and invitees themselves." (*Vasilenko*, *supra*, 3 Cal.5th at p. 1090.) Because there are few "reasonable ameliorative steps" available to landowners to create more parking spaces, landowners are not "particularly blameworthy" for failing to take them. (*Id.* at p. 1091.) Imposing a duty to provide sufficient onsite parking for all invitees would also impose an unacceptably heavy burden, as every business and every multifamily residential dwelling complex would be required to provide parking for every guest, or else face liability for damages incurred when those guests cannot find onsite parking and are injured when trying to access the property from off site.

12

If, as in *Vasilenko*, requiring landowners "to continuously monitor the dangerousness of the abutting street and other streets in the area," "to relocate their [offsite] parking lots as conditions change," and potentially "to hire employees to assist invitees with crossing the street" was considered a "significant burden[]" (*id.* at p. 1090), the burden imposed by the proffered duty here—that is, reconfiguring the property to accommodate parking for every guest or face liability for all accidents arising from their offsite parking—is massive. (See *McGarvey*, *supra*, 18 Cal.App.3d at p. 562 [noting similarly unachievable burden].) Indeed, it is this type of "'"potentially infinite liability"'" that "'the concept of duty'" is designed to "'limit.'" (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397.) Lastly, because insurance could be available to the landowner, the invitee, and the driver, the insurance factor is neutral in the analysis. (Accord, *Vasilenko*, at p. 1091.)

Thus, even if *Vasilenko*'s analysis of the *Rowland* factors did not dictate a finding of new duty, our own independent analysis of those factors counsels that finding.

### B. *Statute-based duty*

A duty of care can also be grounded in—and hence "borrowed" from—the public policy embodied in a legislatively enacted statute or ordinance. (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 927 & fn.8 (*Elsner*); *Vesely*, *supra*, 5 Cal.3d at p. 164.)

Plaintiff argues that the Association owes her a duty of care by virtue of the guest parking conditions set forth in ordinance No. 151,411. We reject this argument for two reasons: (1) ordinance No. 151,411 is a parcel-specific ordinance adopted as the final step of a multistep administrative procedure and is therefore incapable of forming the basis for a duty of care, and (2)

the guest parking condition of ordinance No. 151,411 was aimed at preserving the aesthetic character of the surrounding neighborhood, and not at protecting invitees from traffic accidents.

1.    *Ordinance No. 151,411 is a special ordinance incapable of forming the basis for a duty of care*

Not all legislative enactments—that is, not all statutes and ordinances— are capable of forming the basis for a duty of care giving rise to a negligence claim.

Legislative enactments sometimes embody and implement "a 'broad, generally applicable rule of conduct on the basis of general public policy.'" (*Horn v. County of Ventura* (1979) 24 Cal.3d 605, 613 (*Horn*), quoting *San Diego Building Contractors Assn. v. City Council of San Diego* (1974) 13 Cal.3d 205, 212-213.) When they do, they set forth the same type of "fundamental policy decisions" that are capable of forming the basis for a duty of care. (*Cal. Serv. Station, supra,* 62 Cal.App.4th at p. 1176 ["The creation of a negligence duty of care involves fundamental policy decisions"].)

Other times, however, legislative enactments embody no fundamental policy decision.  One such instance is where, as here, the enactment applies to a single parcel of property.[5]

---

[5]    If a *duty* of care otherwise exists, a special ordinance that regulates a specific person or parcel can set the *standard* of care used to evaluate whether that independently existing duty has been breached.  (*Simoneau v. Pacific E.R. Co.* (1913) 166 Cal. 264, 269-270 [special ordinance granting defendant a franchise on condition that it operate its streetcars at no more than eight miles per hour can be used to assess whether defendant breached its existing duty of care when operating at faster speeds]; accord,

14

There is no question that the City Council's rezoning the Shadow Glen parcel was "a legislative act" because it was effectuated by means of an ordinance amending the City's municipal code. (*Arnel Dev. Co. v. Costa Mesa* (1980) 28 Cal.3d 511, 516; *Johnston v. Claremont* (1958) 49 Cal.2d 826, 835, overruled on other grounds as stated in *Associated Home Builders etc., Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 596; *Mountain Defense League v. Board of Supervisors* (1977) 65 Cal.App.3d 723, 728; *Federation of Hillside & Canyon Assns. v. City of Los Angeles* (2004) 126 Cal.App.4th 1180, 1195.) But that act embodied no generally applicable, fundamental public policy. Instead, ordinance No. 151,411 was a parcel-specific enactment that served as the culmination of a process of an internal, parcel-specific administrative review. The original developer of the Shadow Glen complex filed an application to rezone its parcel of property (and only its parcel of property), and that application proceeded through several levels of administrative review by City officials until the City Council, as the final level of that review, approved the developer's rezoning application. Although the City Council's *mechanism* for doing so was through enacting ordinance No. 151,411, that was necessary because the City's zoning map was set forth in an ordinance (at the time, Los Angeles Municipal Code section 12.04) and thus could be modified only through another ordinance. However, the mechanism of enacting an ordinance did not alter the fundamental character of the City Council's act as embodying merely a parcel-specific policy that was tied to the "'facts peculiar to the individual case.'" (See *Horn,*

---

*Stafford v. UFW* (1983) 33 Cal.3d 319, 324 (*Stafford*) [injunction may be used to define standard of care].)

15

*supra*, 24 Cal.3d at p. 613; *Anaheim Redevelopment Agency v. Dusek* (1987) 193 Cal.App.3d 249, 258.)

Because ordinance No. 151,411 embodies no "general public policy," it cannot be used as a fulcrum to create a duty of care.

2. *Ordinance No. 151,411 was not designed to protect invitees against injuries suffered from parking off site*

Even if a statute or ordinance is designed to embody and effectuate fundamental public policy by setting forth a generally applicable rule of conduct, it can give rise to a duty of care actionable in negligence only if (1) the plaintiff invoking the statute is "'a member of the class of persons the statute [or ordinance] . . . was designed to protect,'" and (2) the "'harm'" the plaintiff suffered was "'one the statute [or ordinance] . . . was designed to prevent.'" (*Ramirez v. Nelson* (2008) 44 Cal.4th 908, 918, quoting *Stafford, supra*, 33 Cal.3d at p. 324; *Nunneley v. Edgar Hotel* (1950) 36 Cal.2d 493, 497-498 (*Nunneley*); *Keech v. Berkeley Unified School Dist.*(1984) 162 Cal.App.3d 464, 469 (*Keech*).)  Whether a statute or ordinance satisfies these requirements is a question of law.  (*Jacobs Farm/Del Cabo, Inc. v. Western Farm Service, Inc.* (2010) 190 Cal.App.4th 1502, 1526.)

Ordinance No. 151,411 satisfies neither of these prerequisites.

In assessing whom an ordinance was designed to protect and the harm it was designed to prevent, we apply the usual canons of statutory construction.  (*1300 N. Curson Investors, LLC v. Drumea* (2014) 225 Cal.App.4th 325, 332 ["The canons of statutory construction apply to local ordinances"].)  We start with the text of the ordinance, and read that text "'"in the context of the statute . . . as a whole."'"  (*California Charter Schools Assn. v. Los Angeles Unified School Dist.* (2015) 60 Cal.4th 1221, 1237; *People v. Valencia* (2017) 3 Cal.5th 347, 358, quoting *Professional*

16

*Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1037.) If the text does not provide a clear answer, we may also look to other "'extrinsic sources'" such as the ordinance's legislative history. (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 531.)

The condition in ordinance No. 151,411 that, as part of granting the developer's rezoning request, required the developer to provide an additional 34 "guest parking" spaces was one of five such conditions. As noted above, the other conditions required the builder not to exceed a specified building height, to "attractively landscape" the complex's "open areas," to landscape a buffer setback on the main street outside the complex, and to point all lighting inward. The City specifically found that all five conditions were "necessary to protect the best interests of and assure a development more compatible with the surrounding neighborhood." Indeed, the City's municipal code defined a condition to rezoning—that is, a "Q classification"—as a condition "deemed necessary to protect the best interests of and assure a development more compatible with the surrounding property or neighborhood or to secure an appropriate development in harmony with the objectives of the General Plan." As the plain text of the conditions themselves, the finding that justified them, and the codified definition of a rezoning condition all make clear, these conditions in ordinance No. 151,411—including the guest parking condition that would avoid overcrowded curbsides—were designed to preserve the residential character and aesthetics of the surrounding neighborhood. Indeed, the entire purpose of ordinance No. 151,411 was to rezone the complex's parcel, and the chief purposes of most zoning laws are to "maint[ain] . . . the character of residential neighborhoods" and ""advance aesthetic

17

values."'" (*Ewing v. City of Carmel-By-The-Sea* (1991) 234 Cal.App.3d 1579, 1590; *Echevarrieta v. City of Rancho Palos Verdes* (2001) 86 Cal.App.4th 472, 478.) What is more, the penalty for noncompliance with ordinance No. 151,411's conditions is the imposition of administrative fines (L.A. Mun. Code, §§ 12.29, 11.2.01, 11.2.03, 11.2.04), a remedy that reinforces the notion that the developer's duty was to the City (*Selger*, *supra*, 222 Cal.App.3d at p. 1591 [so holding]). As a result, ordinance No. 151,411 was designed to protect "the community at large" from the harm of deleterious aesthetics and degradation of the surrounding neighborhood. (Accord, *Nunneley*, *supra*, 36 Cal.2d at p. 497 [no duty where statute was "'intended to protect the interests of the . . . community at large, rather than those of any particular class of individuals'"].) Nothing in ordinance No. 151,411 or its legislative history evinces any intent to protect invitees from traffic accidents that occur when they park off site.

Plaintiff responds with three arguments.

First, she cites the section of the City's municipal code introducing the "purpose" of the City's zoning provisions. Among the seven general purposes of those code provisions is "to promote health, *safety*, and the general welfare." (Italics added.) However, that all zoning activities by the City might be designed to further "promote . . . safety" in the general sense is irrelevant. What matters is whether the class of plaintiffs and the harm are "of the precise nature [the] statute [or ordinance at issue] was designed [to protect and] to prevent," respectively (*Bologna v. City & County of San Francisco* (2011) 192 Cal.App.4th 429, 435; *Keech*, *supra*, 162 Cal.App.3d at p. 469), not whether the "[city]wide scheme" for zoning "has an overall purpose of

18

promoting . . . safety" (*Capolungo v. Bondi* (1986) 179 Cal.App.3d 346, 352 (*Capolungo*)).

Second, plaintiff contends that the guest parking condition would have the inevitable effect of "lessening congestion on the streets" and obviating some of the need for offsite parking, and thus must have been designed in part to protect guests from the harm of traffic accidents. However, the fact that an ordinance not designed to protect the class of persons of which plaintiff is a part and not designed to protect against the harm she suffered might have a *secondary* effect or design to protect that class against that harm is not enough to create a duty of care. (See *Capolungo*, *supra*, 179 Cal.App.3d at pp. 351-352 [ordinance that prohibits motorists from parking in yellow curb loading zones for more than 24 minutes designed to facilitate loading and unloading, not to prevent traffic accidents; no duty]; *Gilmer v. Ellington* (2008) 159 Cal.App.4th 190, 203-204 [statute prohibiting grid-locking of intersections designed to encourage free flow of traffic, not to protect against traffic accidents; no duty]; *Lua v. Southern Pacific Transportation Co.* (1992) 6 Cal.App.4th 1897, 1902-1903 [regulation specifying when trains can block roadways designed to facilitate free flow of traffic, not to prevent accidents; no duty]; *Selger*, *supra*, 222 Cal.App.3d at pp. 1590-1591 [ordinance requiring property owners to keep abutting sidewalks clean designed to assist city in those duties, not to protect passersby from injury; no duty]; *Urhausen v. Longs Drug Stores California, Inc.* (2007) 155 Cal.App.4th 254, 269-270 (*Urhausen*) [regulations governing the slope of parking spaces for disabled persons designed to enable access parking in those spaces, not to protect persons walking across those spaces on foot with crutches; no duty]; *Victor v. Hedges* (1999) 77 Cal.App.4th

19

229, 234-238 [statute prohibiting parking vehicles on sidewalks designed to prevent obstruction of sidewalks and injuries to pedestrians forced to walk around the "obstructing vehicle," not to protect pedestrians on the sidewalk from being struck by vehicles not illegally parked; no duty]; *Wawanesa Mutual Ins. Co. v. Matlock* (1997) 60 Cal.App.4th 583, 587 [statute that prohibits furnishing tobacco to minors designed to prevent addiction, not to prevent fires; no duty]; cf. *Thomson v. Bayless* (1944) 24 Cal.2d 543, 546 [ordinance prohibiting parking on highway when parking elsewhere is practicable "designed to protect persons traveling on the highway"; duty].)

Lastly, plaintiff cites the testimony of an expert that the "purpose" of ordinance No. 151,411's guest parking condition was to "promote[] public safety" and to "reduce" the number of vehicles "park[ed] on the street." However, the meaning and purpose of a legislative enactment is a question of law for the court; an expert's opinion on such matters is an inadmissible legal conclusion. (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1179 [expert opinion on meaning of statute "[ir]relevant" because statutory interpretation is for the court].) We therefore disregard it.

## II. Plaintiff's Further Arguments

Plaintiff assails our conclusion with several assertions that boil down to two arguments.

First, plaintiff argues that the Association engaged in active misfeasance because it reduced the number of available guest parking spaces from 34 to 6, and thereby engaged in affirmative misconduct that violated ordinance No. 151,411.

This argument is without merit for several reasons.

20

To begin, it conflates a *duty* of care with the *standard* of care. Although a statute or ordinance can give rise to a duty of care *and* simultaneously fix the standard of care (*Elsner*, *supra*, 34 Cal.4th at p. 927, fn. 8; *Vesely*, *supra*, 5 Cal.3d at p. 164; *Johnson v. Honeywell Internat. Inc.* (2009) 179 Cal.App.4th 549, 558), the two concepts are "analytical[ly] distinct[]" (*Cal. Serv. Station*, *supra*, 62 Cal.App.4th at p. 1178). The duty of care establishes whether one person has a legal obligation to prevent harm to another (*Paz*, *supra*, 22 Cal.4th at p. 559), while the standard of care defines what that person must do to meet that obligation and thus sets the standard for assessing whether there has been a breach (*Webster v. Claremont Yoga* (2018) 26 Cal.App.5th 284, 288). The default standard of care is the obligation to take "reasonable care" (*Lopez*, *supra*, 55 Cal.App.5th at p. 250; *Flowers v. Torrance Memorial Hospital* (1994) 8 Cal.4th 992, 998 (*Flowers*); *Ramirez v. Plough, Inc.* (1993) 6 Cal.4th 539, 546 (*Ramirez*), although a statute may define a more specific obligation (*Ramirez*, at p. 547; *Flowers*, at p. 997, fn. 2) and, under the doctrine of negligence per se, may erect a rebuttable presumption of breach if that obligation is not met (Evid. Code, § 669, subd. (a); *Cal. Serv. Station*, at p. 1177; see also *Sierra-Bay Fed. Land Bank Assn. v. Superior Court* (1991) 227 Cal.App.3d 318, 333-334 ["Nearly all the cases in which the presumption of negligence under Evidence Code section 669 has been applied involve what may be termed 'safety' statutes, ordinances or regulations, that is, governmentally designed standards of care intended to protect a particular class of persons from the risk of particular accidental injuries"]). The standard of care is relevant only if there is a duty of care for it to impose. The standard of care *presupposes* a duty; it cannot *create* one. (See *Urhausen*,

21

*supra*, 155 Cal.App.4th at p. 270 ["a regulation will not be found to have . . . *intended* to prevent a particular accident merely because compliance with the regulation would foreseeably have prevented the accident"].) Yet that is what plaintiff invites us to do—to infer a duty of care from the fact that, if a duty of care otherwise existed, 34 guest parking spaces would set the standard of care. Because this puts the cart before the horse, we must decline plaintiff's invitation.

Further, plaintiff's invocation of the doctrine of misfeasance is of no aid. "Misfeasance exists when [a] defendant," through its "affirmative actions," "is responsible for making the plaintiff's position worse" by "creat[ing] a risk of harm to the plaintiff." (*Weirum v. RKO General, Inc.* (1975) 15 Cal.3d 40, 49 (*Weirum*); *Minch v. Department of California Highway Patrol* (2006) 140 Cal.App.4th 895, 908; *Romero v. Superior Court* (2001) 89 Cal.App.4th 1068, 1079.) "Liability for misfeasance is based on the general duty of ordinary care to prevent others from being injured by one's conduct." (*Seo v. All-Makes Overhead Doors* (2002) 97 Cal.App.4th 1193, 1202; *Weirum*, at p. 49.) Thus, if a defendant has no duty of care under the general principles set forth above and does not otherwise undertake acts that prompt the plaintiff to be less careful (e.g., *McDaniel, supra*, 220 Cal.App.3d at pp. 9-10), its misfeasance is not actionable. As explained above, the Association owes plaintiff no duty of care under the general principles of the law of negligence and there was no evidence that plaintiff was less careful in crossing the street *because* the complex had fewer onsite parking spaces than required by ordinance No. 151,411.

Lastly, accepting plaintiff's misfeasance-based argument creates perverse incentives inimical to tort law. If, as plaintiff

22

suggests, the Association commits actionable misfeasance by reducing the number of guest parking spaces from 34 to 6—but engages in nonactionable nonfeasance if it never reserved 34 spaces in the first place—landowners, by virtue of tort law, would have every incentive to offer no guest parking. Yet the net effect of offering no guest parking is to make *more* people park off site and thereby risk injury in traffic accidents.

Second, plaintiff argues that even if ordinance No. 151,411 does not by itself give rise to a duty of care, we should rebalance the *Rowland* factors through the prism of the ordinance's requirement to have 34 guest parking spaces. We reject this argument. This argument once again commits the sin of conflating a standard of care with a duty of care. It also lacks the support of precedent and logic. Although a statute that does not support an evidentiary presumption of breach of the standard of care may still be considered when fixing the standard of care (e.g., *Powell v. Pacific E.R. Co.* (1950) 35 Cal.2d 40, 46), plaintiff cites no precedent where a court in weighing the *Rowland* factors has considered a statute that does not by itself give rise to a duty. This is hardly a surprise, at least where, as here, one of the reasons the statute does not give rise to a duty of care is because it is not designed to protect the plaintiff against the harm at issue. Such a statute is, by dint of those reasons, irrelevant to the analysis dictated by the *Rowland* factors and thus should not influence them.

\*     \*     \*

Because we have concluded that summary judgment is appropriate because the Association owes plaintiff no duty of care as a matter of law, we have no occasion to address the parties'

23

further arguments regarding the existence or nonexistence of proximate causation.

## DISPOSITION

The judgment is affirmed.  The Association is entitled to its costs on appeal.

**<u>CERTIFIED FOR PUBLICATION</u>.**


_____, J.
HOFFSTADT

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ

24