Filed 4/27/26  TC Nevada v. Hernandez CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| TC NEVADA, LLC et al., | B338694 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 22STCV02323) |
| v. | |
| LUZ ELENA HERNANDEZ, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Anne Hwang, Judge.  Affirmed.

The Bucklin Law Firm and Stephen L. Bucklin for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Ernest Slome, Daniel R. Velladao and Patrick J. McCormick for Defendants and Respondents.

_____

## INTRODUCTION

Plaintiffs and appellants TC Nevada, LLC and TLC Luxury, LLC sued defendant and respondent Luz Hernandez and others after a fire damaged plaintiffs' luxury buses. Plaintiffs appeal from a judgment of dismissal following an order granting summary judgment in favor of Hernandez.[1] Plaintiffs contend Hernandez made an insufficient showing to shift the burden of proof on summary judgment. Alternatively, plaintiffs contend that they have shown material issues of fact precluding summary judgment. Hernandez contends that after she met her initial burden by showing plaintiffs reasonably cannot be expected to establish one or more elements of their negligence claim, plaintiffs failed to provide evidence raising a material factual issue as to duty and breach, and therefore summary judgment was warranted. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Background

This lawsuit concerns two adjacent commercial properties in Compton, California. Hernandez's property is occupied by the business H&H Pallets, Inc. (H&H), co-owned by Hernandez and her son, that buys and sells pallets.[2] Plaintiffs stored luxury

---

[1] None of the other defendants were involved in the summary judgment motion at issue on this appeal.

[2] Neither H&H nor Hernandez's son was a party the motion for summary judgment or is a party to this appeal.

2

buses on a commercial property adjacent to H&H.  On February 26, 2021, a fire started in an alleyway, eventually spreading to H&H and then to adjacent property, where the fire damaged or destroyed plaintiffs' luxury buses.  The initial cause of the fire is undetermined, but it is undisputed that the fire started in the alley and not on Hernandez's property.

## B.  <u>Procedural History</u>

In January 2022, plaintiffs filed suit against Hernandez and others, alleging claims of negligence and negligence per se, based on the theory that Hernandez's improper storage of pallets, in violation of unidentified statutes, ordinances, or laws, increased the risk of harm and proximately caused the fire damage to the buses.

Hernandez served plaintiffs with form and special interrogatories, requests for admission, and requests for production of documents.  In relevant part, plaintiffs failed to give any substantive responses to Hernandez's discovery requests about facts supporting plaintiffs' contentions that Hernandez's negligence in storing propane tanks and pallets on her property proximately caused plaintiffs' ten luxury buses to be destroyed by the fire, instead repeatedly answering that such facts were "unknown".  The only response of any substance from plaintiffs was their August 2, 2023 response to special interrogatory number one, which asked plaintiffs to identify all facts supporting their claim that on the date of the fire, "defendant knew or should have known of an ongoing hazardous situation, which existed upon their property."  Plaintiffs responded: "Defendant accumulated large piles of pallets and large amounts

3

of propane on their property, did nothing to address the homeless situation in the vicinity, did not provide adequate security and failed to procure adequate insurance to address her liability in the event of a large loss."

On November 3, 2023, Hernandez filed a motion for summary judgment. In her motion, Hernandez argued that plaintiffs possessed no evidence supporting their claims of negligence against her. Specifically, Hernandez did not owe plaintiffs a duty of care to protect plaintiffs' property against hazards originating from the activities of third parties on property that Hernandez did not own or control. Also, Hernandez argued that plaintiffs did not possess and could not reasonably obtain evidence to support their claim that the pallets on Hernandez's property: (1) were stacked in a negligent manner on Hernandez's property; (2) played a role in plaintiffs' claimed damages; or (3) were stacked in a manner that violated a law, statute, or ordinance.

Plaintiffs' opposed the motion, arguing that Hernandez failed to meet her initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact, because she testified in deposition that she did not know how the fire started. Plaintiffs also argued that Hernandez's deposition testimony that she did not know anything about the stacking of the pallets on the property meant she could not rebut plaintiffs' interrogatory responses. In addition, two expert declarations submitted with their opposition created a triable factual issue about whether the pallets negligently stored on Hernandez's property had proximately caused their damages. The declarations were from fire and explosion expert Nina Scotti and real estate management expert Robert Griswold. Plaintiffs'

4

opposition also included a declaration from Chris Sanchez, the manager of plaintiff TLC Luxury, LLC.

Sanchez declared he was the manager of plaintiff TLC Luxury, LLC, the fire destroyed ten buses worth approximately ten million dollars, and the company had lost an additional ten million dollars in lost income because the buses were no longer available for use. Sanchez also stated "[f]or many months" before the fire occurred, the pallets at H&H "were stacked more than twenty (20) feet in height. In addition, during the same period of time the pallets were stacked very closely together."[3]

The declaration by expert witness Scotti opined that based on a report prepared by federal investigators, it was her opinion that "the fire originated in the alley" between two power poles. A couch and mattress in the alley "contributed to the rapid spread of fire outside the area of fire origin." In four short paragraphs, Scotti described how the fire spread from the alley to plaintiffs' buses: "The fire spread to Matrix Mattress [another nearby business] where the fire loading (stored mattresses), intensified the heat and fire. [¶] . . . The thermal heat flux energy, quickly spread to H & H Pallets where the fire ignited the high stack of pallets stored next to the property line. [¶] . . . The arrangement and storage height of the pallets allowed the fire to climb upward supported by oxygen that fed through the spacing design of the pallets. The oxygen contributed to the combustion process creating a chimney fire effect. [¶] . . . The heat fueled by the

---

[3] As we explain later, because Sanchez's declaration does not even purport to address the condition of the pallets on the date of the fire, was not included in plaintiffs' separate statement of undisputed facts, and lacks proper foundation, these statements are insufficient to establish a material factual issue.

stack of pallets ignited more pallets and other combustible storage, propane and vehicles in the storage yard as it continued to spread to the adjoining property of TLC Luxury Transportation, destroying the row of buses in a sequence." Scotti opined that if H&H had adhered to Fire Code standards for pallet storage, including "proper spacing and clearance from adjoining property lines; maximum storage height; [and] the proper spacing distance between other stored pallet stacks," plaintiffs' fire damage "could have been significantly reduced, if not avoided."

Griswold's declaration stated that Hernandez, as a landowner and a landlord of an industrial property, should have educated herself about the requirements of the Fire Code, pointing out that even though Hernandez was not English-speaking, she could have asked for a Spanish-speaking inspector. Griswold declared that landlords need to educate themselves about the Fire Code and when Hernandez failed to do so, she created a dangerous condition on her property.

In her reply brief, Hernandez countered that nothing in plaintiffs' opposition demonstrated that Hernandez owed a duty of care to protect the owners of adjacent properties, or even if such a duty was owed, no facts existed to show she had breached the duty.

After posting a tentative ruling and holding a hearing, the trial court granted Hernandez's motion for summary judgment, reasoning that Hernandez met her burden of showing that plaintiffs could not reasonably obtain evidence that the pallets or propane on Hernandez's property caused or negligently contributed to the spread of the fire. According to the court, the burden then shifted to plaintiffs to establish a triable issue of

6

material fact.  The court noted that plaintiffs did not provide a separate statement of disputed facts, and only disputed two factual statements set forth in Hernandez's separate statement: the origin of the fire and whether Hernandez was responsible for the fire.  The court ruled that "considering all reasonable inferences in favor of Plaintiffs, Plaintiffs have failed to meet their burden to establish a triable issue of fact regarding a duty surrounding the manner in which the pallets were stacked on [Hernandez]'s property.  Plaintiffs offer no additional facts in their separate statement, or evidence relied upon by their experts, that show how the pallets were organized before the fire began." (fn. omitted.)

Judgment in favor of Hernandez and against plaintiffs was entered, and plaintiffs filed a timely notice of appeal.

## DISCUSSION

### A.   Summary Judgment and Shifting Burdens

In adjudicating a motion for summary judgment, the moving party (usually the defendant) has the initial burden of showing that the plaintiff "has not established, and reasonably cannot be expected to establish, one or more elements of the cause of action in question." (*Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 500; Code Civ. Proc., § 437c, subd. (c).)

Our Supreme Court has stressed that merely "point[ing] out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence" will not suffice, and that the defendant must instead present *evidence* from which the plaintiff's inability to prove his claim can be inferred.  (*Aguilar v. Atlantic Richfield*

7

*Co.* (2001) 25 Cal.4th 826, 854, fn. omitted (*Aguilar*).) The moving party may, however, "present evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence—as through admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing." (*Id.* at p. 855, fn. omitted.) The evidence may consist of "answers to interrogatories" as well as other modes of discovery like "admissions" and "depositions," as well as any other matter subject to judicial notice. (Code Civ. Proc., § 437c, subd. (b)(1); cf. *Collin v. CalPortland Co.* (2014) 228 Cal.App.4th 582, 587 [summary judgment can also be supported "through factually devoid discovery responses"].) "If plaintiffs respond to comprehensive interrogatories seeking all known facts with boilerplate answers that restate their allegations, or simply provide laundry lists of people and/or documents, the burden of production will almost certainly be shifted to them once defendants move for summary judgment and properly present plaintiffs' factually devoid discovery responses." (*Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 107 (*Andrews*).) In other words, the evidence offered in support of a summary judgment motion may consist of " ' "factually devoid" discovery responses from which an absence of evidence can be inferred.' " (*Id.* at p. 101.)

If the moving party carries its initial burden, "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action. . . ." (Code Civ. Proc., § 437c, subd. (p)(2); *Nalwa v. Cedar Fair, L.P.* (2012) 55 Cal.4th 1148, 1154.)

Here, by providing the trial court with plaintiffs' factually devoid discovery responses, Hernandez met her initial burden of

showing that plaintiffs could not reasonably obtain any evidence showing that Hernandez was negligent or that her negligence caused the harm suffered by plaintiffs.  Plaintiffs simply responded "unknown" to special interrogatories requesting all existing facts and names of witnesses to support their contentions that Hernandez created a dangerous condition by allowing pallets to be stacked higher than permissible by law or storing propane negligently, and that absent such negligence, the fire would not have spread and destroyed plaintiffs' property.  When asked to identify what laws, statutes, or ordinances plaintiff purportedly violated, plaintiffs also responded "unknown."  And after denying all of Hernandez's requests for admission, plaintiffs responded to Form Interrogatory 17.1, which in part asks the responding party to identify all facts that support such denials, with either a single word answer, "unknown," or the meaningless statement, "According to Exhibit 21 the initial cause of the fire is still under investigation."[4]  All of these factually devoid discovery responses support a reasonable inference that plaintiffs cannot reasonably obtain evidence to support their claims against Hernandez, and so the burden shifts to plaintiffs to show a material factual issue on one or more elements of their negligence claims.

---

[4] Exhibit 21 was a report from the Los Angeles Sheriff's Department, produced by plaintiffs in response to Hernandez's request for production of documents, but it contained no information relevant to any possible negligence by H&H or Hernandez.

9

**B.** **Plaintiffs' Burden to Show a Genuine Issue of Material Fact**

Plaintiffs have not demonstrated (before the trial court or on appeal) that they have admissible evidence sufficient to establish a genuine issue of material fact on their negligence or negligence per se claims. At core, plaintiffs contend that Hernandez was negligent in failing to inspect her property and discover the alleged "dangerous condition" of pallets stacked too high and too densely. They argue this negligence caused plaintiffs monetary damage when their luxury buses caught on fire. Hernandez contends that she did not owe plaintiffs any duty to protect their property from a fire originating outside of her property, and even if such a duty was owed, plaintiffs lack any evidence of breach.

We agree as a general proposition that a landowner has a duty to exercise reasonable care in maintaining the land, and that this duty of care is not limited solely to injuries occurring on the land itself. (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158–1160.) However, on the facts before us, plaintiffs have failed to provide any law or evidence to support their argument that the generalized duty to exercise reasonable care requires the non-participatory co-owner of a commercial property to protect owners or occupiers of adjacent commercial properties from risks that originate outside of either property.

Plaintiffs' appeal focuses solely on a landowner's duty to exercise reasonable care, including a duty to inspect the property

10

for dangerous conditions.[5]  However, the cases plaintiffs rely on are classic "slip and fall" cases where a business that is open to the public has a duty to ensure the safety of invitees present on the landowner's property.  (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205 ["store owner exercises ordinary care by making reasonable inspections of the portions of the premises open to customers, and the care required is commensurate with the risks involved"]; *Peralta v. Vons Companies, Inc.* (2018) 24 Cal.App.5th 1030, 1035–1036 [store owner has "a duty to exercise reasonable care to keep the premises reasonably safe for patrons"].)  Those cases bear no relevance to determining whether the owner of a commercial property closed to the general public owes adjacent landowners a duty to minimize the risk that a fire originating off-premises will spread and be amplified by a condition on defendant's property and then spread to those adjacent properties.

We determine the trial court correctly concluded that Hernandez did not owe plaintiffs a duty of care, and even if she

---

[5] To the extent plaintiffs might have argued that Hernandez had any duty to control the acts of the unknown third parties who initially caused the fire in the alley, they have forfeited such arguments by failing to raise them in the trial court or on appeal.  " '[A]s a general matter, there is no duty to act to protect others from the conduct of third parties.' (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 235.)  However, '[i]n a case involving harm caused by a third party, a person may have an affirmative duty to protect the victim of another's harm if that person is in what the law calls a "special relationship" with either the victim or the person who created the harm.' (*Brown* [*v. USA Taekwondo* (2021)] 11 Cal.5th [204,] 215 (*Brown*).)" (*Murphy v. Pina* (2025) 115 Cal.App.5th 305, 322 (*Murphy*).)

11

did, plaintiffs have not met their burden to show a material factual issue on the question of breach.

### 1. *Negligence – Relevant Law*

A claim based on negligence and premises liability share the same elements, namely, (1) a legal duty of care, (2) breach of that duty, and (3) proximate cause resulting in injury. (*Kesner, supra*, 1 Cal.5th at p. 1158; *Issakhani v. Shadow Glen Homeowners Assn., Inc.* (2021) 63 Cal.App.5th 917, 924, (*Issakhani*).) In order to prove negligence, plaintiff must establish duty, breach of that duty, causation, and damages. (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618 (*Regents*).) " '[T]he existence and scope' of the defendant's duty is one of law to be decided by the court, not by a jury, and therefore it generally is 'amenable to resolution by summary judgment.' [Citation.]" (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1004; *Murphy, supra*, 115 Cal.App.5th at p. 322.)

"Duty is not universal; not every defendant owes every plaintiff a duty of care. A duty exists only if ' "the plaintiff's interests are entitled to legal protection against the defendant's conduct." ' [Citation.] Whether a duty exists is a question of law to be resolved by the court. [Citation.]" (*Brown, supra*, 11 Cal.5that p. 213.) "Where the defendant has neither performed an act that increases the risk of injury to the plaintiff nor sits in a relation to the parties that creates an affirmative duty to protect the plaintiff from harm, however, our cases have uniformly held the defendant owes no legal duty to the plaintiff." (*Id.* at p. 216.)

"The 'general rule' governing duty is set forth in Civil Code section 1714 (section 1714). [Citation.] First enacted in 1872, section 1714 provides: 'Everyone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person . . .' [Citation.] (*Id.*, subd. (a).) This statute establishes the default rule that each person has a duty 'to exercise, in his or her activities, reasonable care for the safety of others.' [Citation.] [¶] Section 1714 states a broad rule, but it has limits. We have explained that the law imposes a general duty of care on a defendant only when it is the defendant who has ' "created a risk" ' of harm to the plaintiff, including when ' "the defendant is responsible for making the plaintiff's position worse." ' [Citations.] The law does not impose the same duty on a defendant who did not contribute to the risk that the plaintiff would suffer the harm alleged. Generally, the 'person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another' from that peril. [Citations.]" (*Brown, supra*, 11 Cal.5th at pp. 213–214.)

Civil Code section 1714 does not, however, "impose a presumptive duty of care to guard against any conceivable harm that a negligent act might cause." (*Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 399.) Although the statutory language does not draw any express distinction between personal, property, or financial injury, California Supreme Court cases recognize that "liability in negligence for purely economic losses . . . is 'the exception, not the rule.' " (*Id.* at p. 400.)

Liability under a negligence theory "extends a right of recovery to individuals in relationships involving dependence or control, and who by virtue of those relationships have reason to

13

expect the defendant's protection." (*Brown, supra*, 11 Cal.5th at p. 220.) "A defendant cannot be held liable in negligence for harms it did not cause unless there are special circumstances — such as a special relationship to the parties — that give the defendant a special obligation to offer protection or assistance. This rule reflects a long-standing balance between several competing interests. It avoids difficult questions about how to measure the legal liability of the stranger who fails to take affirmative steps to prevent foreseeable harm, instead leaving the stranger to make his or her own choices about what assistance to offer." (*Ibid.*)

### 2. *Hernandez Does Not Owe a Duty of Care to Plaintiffs*

Plaintiffs here have not identified any facts that would support a determination that Hernandez owed plaintiffs any duty of care. No facts have been identified to show that Hernandez, as the owner of a commercial property, has any "special relationship" with plaintiffs, as the owners or occupiers of an adjacent commercial property, or with any possible person who started the fire in the alleyway behind Hernandez's commercial property, such that it owed plaintiffs a duty of care to reduce the risk of a fire spreading from the alley, through Hernandez's property, and then onto plaintiffs' property.

#### a. *Rowland* Factors

"A duty of care exists when one person has a legal obligation to prevent harm to another person, such that breach of

14

that obligation can give rise to liability.  [Citations.]  Whether a duty of care exists is not a matter of plucking some immutable truth from the ether; instead, the existence of a particular duty of care reflects a determination that the ' " 'sum total' " ' of ' " 'considerations of [public] policy [should] lead the law to say that the particular plaintiff is entitled to protection. ' " ' " (*Issakhani, supra*, 63 Cal.App.5th at pp. 924–925.)

In determining whether a particular defendant owes a particular plaintiff a legal duty of care sufficient to support a negligence claim, "courts must ask:  (1) Does the defendant owe the plaintiff a legal duty of care under traditional principles of tort law and, if so, (2) do the relevant public policy considerations set forth in *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*), nevertheless favor 'limiting that duty'?  (*Brown*[*, supra,*] 11 Cal.5th [at pp. 209,] 218−219.)" (*St. John v. Schaeffler* (2025) 109 Cal.App.5th 1146, 1155.)~  The *Rowland* factors are " [1] the foreseeability of harm to the plaintiff, [2] the degree of certainty that the plaintiff suffered injury, [3] the closeness of the connection between the defendant's conduct and the injury suffered, [4] the moral blame attached to the defendant's conduct, [5] the policy of preventing future harm, [6] the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and [7] the availability, cost, and prevalence of insurance for the risk involved." (*Rowland, supra*, 69 Cal.2d at p. 113.)

The first three factors—"foreseeability, certainty, and the connection between the plaintiff and the defendant"—relate to foreseeability of the type of injury, and the last four—"moral blame, preventing future harm, burden, and availability of insurance"—relate to public policy considerations that might

15

influence excluding certain plaintiffs or injuries from relief. (*Kesner, supra*, 1 Cal.5th at p. 1145; *Vasilenko, supra*, 3 Cal.5th at p. 1085.) The *Rowland* factors assist courts in determining whether carving out certain categories of cases from the general duty of reasonable care "is justified by clear considerations of policy." (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 772 (*Cabral*); *Vasilenko v. Grace Family Church* (2017) 3 Cal.5th 1077, 1083.)

The first two *Rowland* factors support finding a duty in the present case because it is both foreseeable that a fire could spread from one property to another, and here it is certain that the spread of the fire caused economic harm to plaintiffs. "The third factor, 'the closeness of the connection between the defendant's conduct and the injury suffered' [citation], is 'strongly related to the question of foreseeability itself' [citation], but it also accounts for third party or other intervening conduct. [Citation.] Where the third party's intervening conduct is foreseeable or derivative of the defendant's, then that conduct does not ' "diminish the closeness of the connection between defendant's conduct and plaintiff's injury." ' [Citations.]" (*Vasilenko, supra*, 3 Cal.5th at p. 1086.) This factor weighs against finding a duty, because the fire did not start on Hernandez's property, and (as we discuss later), there is no evidence that Hernandez took an affirmative action that made the fire any more likely to spread to plaintiffs' property.

Turning to the policy considerations outlined in *Rowland,* these generally weigh against imposing a duty of care to protect adjacent properties. First, imposing a duty is unlikely to prevent future harm beyond the same incentives that lead a business to take measures to protect its own property from fire damage; the

16

persons best suited to prevent this type of harm are the adjacent landowners themselves, since they are already incentivized to protect their own property from fire and are aware of the nature of their neighbors' businesses.  Each landowner is in the best position to take precautionary measures.  (See *Issakhani, supra*, 63 Cal.App.5th at pp. 928–929.)  We would not describe running a pallet recycling business, which inherently involves large amounts of combustible materials, to carry a high degree of "moral blame," and the consequence of imposing a duty would simply be a higher cost of business, which is not necessarily desirable for the community.  Finally, while fire insurance is generally available for an owner's property, the same is true for plaintiffs or any other potential victim of a fire that spreads from one property to another.  This appears to be a situation where both the costs and availability of insurance weigh in favor of each party making their own respective decisions about how much insurance to obtain.  For example, it would be absurd to require a small café to obtain insurance to cover the potential losses if they owed a duty of care to an expensive art gallery next door.

Considering the full circumstances here and the *Rowland* factors, we conclude that the overall weight of considerations counsel against imposing a duty of care in these circumstances.

      b.   <u>Negligence Per Se</u>

Negligence per se "can be applied generally to establish a breach of due care under any negligence-related cause of action." (*Jones v. Awad* (2019) 39 Cal.App.5th 1200, 1210.)  "Under the doctrine of negligence per se, compliance with the standard of conduct established by the relevant statute, ordinance, or

17

regulation is adopted as the duty of care.  [Citation.]  This creates a rebuttable presumption of negligence where the statute, ordinance, or regulation is violated.  [Citation.]"  (*Id*. at p. 1210.)

Negligence per se is not an independent tort.  Rather it is an evidentiary presumption applicable when the violation of a statute, ordinance, or regulation proximately causes death or injury to someone or something protected by the enactment.  (Evid. Code, § 669; *Gravelin v. Satterfield* (2011) 200 Cal.App.4th 1209, 1218–1219.)  " 'Nearly all the cases in which the presumption of negligence under Evidence Code section 669 has been applied involve what may be termed 'safety' statutes, ordinances or regulations, that is, governmentally designed standards of care intended to protect a particular class of persons from the risk of particular accidental injuries.  [Citations.]' "  (*Cal. Serv. Station Etc. Ass'n v. Am. Home Assur. Co.* (1998) 62 Cal.App.4th 1166, 1178 (*CSSARA*), quoting *Sierra–Bay Fed. Land Bank Assn. v. Superior Court* (1991) 227 Cal.App.3d 318, 333–334, fns. omitted.)  "Although a statute or ordinance can give rise to a duty of care *and* simultaneously fix the standard of care [citations], the two concepts are 'analytical[ly] distinct[ ]' [citation].  The duty of care establishes whether one person has a legal obligation to prevent harm to another [citation], while the standard of care defines what that person must do to meet that obligation and thus sets the standard for assessing whether there has been a breach [citation].  The default standard of care is the obligation to take 'reasonable care' [citations], although a statute may define a more specific obligation [citations] and, under the doctrine of negligence per se, may erect a rebuttable presumption of breach if that obligation is not met [citations].  The standard of care is relevant only if there is a duty of care for it to impose.

The standard of care *presupposes* a duty; it cannot *create* one. [Citation.]" (*Issakhani, supra*, 63 Cal.App.5th at pp. 934–935.)

While they did not identify a particular enactment in their opposition to the motion for summary judgment, on appeal plaintiffs belatedly point to section 315.7.3 of the California Fire Code, which provides that pallets shall not be stored at a height exceeding 20 feet. (Cal. Code Regs., tit. 24, § 315.3.) This section appears in the California Code of Regulations, Title 24, Part 9, Chapter 3, and a "user note" at the beginning of the chapter states that the general requirements set out in Chapter 3 "are intended to improve premises safety for everyone, including construction workers, tenants, operations and maintenance personnel and emergency response personnel." <https://codes.iccsafe.org/content/CAFC2025P2/chapter-3-general-requirements>[as of Apr. 24, 2026], archived at https://perma.cc/8MAY-TXMN.

However, plaintiffs do not make any argument about the intended purpose of the section of the Fire Code they rely upon. They certainly do not address why the section would support finding the owner of a pallet recycling facility owes a duty of care to adjacent properties. In fact, the Health and Safety Code already provides for civil liability for fire damage caused to adjacent properties, but only when the individual or entity has set the fire or is responsible for attending to it.[6] (Health & Saf.

---

[6] The full statutory text reads: "Any person who personally or through another willfully, negligently, or in violation of law, sets fire to, allows fire to be set to, or allows a fire kindled or attended by him to escape to, the property of another, whether privately or publicly owned, is liable to the owner of such property for any damages to the property caused by the fire."

Code, § 13007; *Presbyterian Camp & Conference Centers, Inc. v. Superior Court* (2021) 12 Cal.5th 493, 499.)

Ultimately, we are unconvinced that Fire Code section 315.7.3 gives rise to a duty of care in the context before us.  (See, e.g., cases catalogued in *Issakhani, supra*, 63 Cal.App.5th at pp. 933–934; *CSSARA, supra*, 62 Cal.App.4th at p. 1180  ["the Evidence Code section 669 presumption of negligence applies only after determining that the defendant owes the plaintiff an independent duty of care, which has not been demonstrated here"].)

### 3.     *Plaintiffs Have Not Raised a Material Factual Issue that Hernandez Breached Any Duty of Care*

Even if we assume that Hernandez as a landowner had a duty to exercise reasonable care to prevent harm to adjacent landowners, and even if we assume that the scope of her duty included not stacking pallets more than 20 feet high in violation of the Fire Code, plaintiffs still fail to show error.  Plaintiffs have not provided any admissible evidence that on the night of the fire the pallets were stacked or arranged in a manner that violated the Fire Code, and therefore plaintiffs have not raised a material factual issue on whether Hernandez breached her duty to exercise reasonable care.

#### a.     Sanchez Declaration

The only evidence purporting to describe the conditions on Hernandez's property relating to the pallets is the Sanchez declaration.  Sanchez makes the following bald statement, with

20

no background about the basis for the statement (including whether his statement is based upon his personal knowledge): "For many months prior to the fire on February 26, 2021, the pallets at the premises of H&H Pallets, Inc. were stacked more than twenty (20) feet in height. In addition, during the same period of time the pallets were stacked very closely together." This proffered declaration fails to raise a material factual issue of breach, both because it was not cited in plaintiffs' separate statement, and because it lacks any foundation, and even on its face it does not purport to set forth facts existing at the time of the fire.

Both the moving and opposing parties on a motion for summary judgment must include all material facts and supporting evidence in a separate statement.[7] (*Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 492–493 (*LAUSD*).) " '[A]*ll* material facts must

_____

[7] "As Witkin describes it, opposition to a summary judgment 'must contain a separate statement that (1) indicates whether the opposing party agrees or disagrees with the moving party's assertion that specific material facts are undisputed [citation], (2) sets forth plainly and concisely any other material facts that the opposing party contends are disputed, and (3) refers to the supporting evidence for each contention ([Code Civ. Proc., §] 437c[, subd.] (b)(3).' (6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 218, p. 657.) The proper format for the separate statement is illustrated at California Rules of Court, rule 3.1350(f). And the Witkin passage concludes—just as the summary judgment statute expressly provides—this way: 'Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion.' [Citations.]" (*Rush v. White Corp.* (2017) 13 Cal.App.5th 1086, 1097.)

be set forth in the separate statement. "This is the Golden Rule of Summary Adjudication: if it is not set forth in the separate statement, *it does not exist*." ' [Citation.]" (*North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 30−31.) An opposing party must also "clearly indicate which of the facts contained in the moving party's separate statement it disputes. ([Code Civ. Proc.,] § 437c, subd. (b)(3).) Each party also must supply a 'reference to the supporting evidence' in its separate statement ([Code Civ. Proc.,] § 437c, subd. (b)(1), (3))." (*Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1214; *LAUSD, supra*, 57 Cal.App.5th at pp. 492–493.)

Although Sanchez's declaration was filed together with plaintiffs' summary judgment opposition and cited in the first paragraph of the factual summary in the opposition brief, it is not cited anywhere in the separate statement. Therefore, the trial court correctly did not consider it.

In addition, Hernandez raised numerous evidentiary objections to Sanchez's statements about the height and arrangement of the pallets, including that the statements were vague and ambiguous, lacked foundation or personal knowledge, assumed facts not in evidence, were speculative and an incomplete hypothetical.[8] In its order granting summary judgment, the court declined to rule on any of Hernandez's objections, stating "they have no effect on the ruling herein." In

---

[8] The complete list of objections to Sanchez's statement about the pallets was: "Irrelevant. Lacks Foundation. Speculation. Incomplete Hypothetical. Lacks Personal Knowledge. Argumentative. Assumes Facts not in Evidence. Calls for Legal Conclusion. Calls for Expert Opinion."

that circumstance, Hernandez's objections are preserved for our review on appeal. (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534–535.) Because Sanchez does not even purport to have personal knowledge of, or address how the pallets were stacked on the night of the fire, we agree that the court was correct to disregard it. (See *LAOSD Asbestos Cases* (2023) 87 Cal.App.5th 939, 947–948 [corporate representative's declaration correctly excluded where there was no indication representative had personal knowledge].)

### b. Expert Witness Declarations

To the extent that plaintiffs rely on expert witness declarations to raise a genuine issue of material fact, because the expert witnesses had no firsthand knowledge of how the pallets were stacked on the night of the fire, their declarations are ineffectual to create a factual issue on the elements of duty or breach. (*People v. Veamatahau* (2020) 9 Cal.5th 16, 26 [expert testimony about case-specific facts of which the expert has no independent knowledge is excluded as hearsay]; *Martinez v. City of Beverly Hills* (2021) 71 Cal.App.5th 508, 526–527 [plaintiff's expert opinions on whether divot in alley was a dangerous condition did not create a triable issue of material fact].) In *Fireman's Fund Insurance Company v. Romero* (1954) 128 Cal.App.2d 331, the reviewing court reversed a judgment in favor of plaintiffs in an action to recover damages resulting from a house fire, because the trial court had made no finding of negligence by the defendant. (*Id.* at p. 333.) Because the only evidence of defendant's possible negligence was a hearsay statement relied upon by an expert witness, and such evidence

was not admissible, the appellate court remanded for a retrial. (*Id*. at pp. 336–339.)

Neither Scotti nor Griswold professed to have any personal knowledge about the state of the pallets on the night of the fire, instead basing their expert opinion on the assumption that the pallets were stacked higher than 20 feet.  Because plaintiffs failed to refer in their separate statements to any admissible evidence regarding how the pallets were stacked on the night of the fire, the trial court correctly granted summary judgment in favor of Hernandez.

## DISPOSITION

The judgment is affirmed.  Defendant and respondent Luz Hernandez is awarded costs on appeal.

NOT TO BE PUBLISHED.

MOOR, J.

I CONCUR:

HOFFSTADT, P. J.

24

TC Nevada, LLC, et al. v. Luz Hernandez
B338694


BAKER, J., Concurring


Although I do not subscribe to all the particulars of the opinion for the court's analysis, I agree the judgment should be affirmed.


BAKER, J.